HARRIET BROWN v. MARTHA A. BROWN et al.

(Filed 13 January, 1915.)

**1. Deeds and Conveyances—How Construed—Intent—Estates for Life.**

Under the modern doctrine that a deed should be interpreted as a whole to give effect to the grantor's intent, and without undue weight to its formal parts, it is held that a deed for lands to the sons of the grantor as tenants in common, with an habendum "reserving and retaining" in the grantor "an estate in the land during his life and the lives of" his four daughters, naming them, expressing the desire of the grantor that he and his said daughters shall and may live on the said lands during their lives as members of his family, and after his death his daughters as members of the family or families of his sons, conveys to the sons the fee in the lands after the termination of the life interests reserved.

**2. Same—Repugnancy.**

A conveyance of the fee, with reservation in the habendum of a life estate in the grantor for his own benefit and for the use of his four daughters during their lives, will not be construed as repugnant when it appears, interpreting the deed as a whole, that it was the intent of the grantor that the grantees should take in remainder, nor will the word "reserves" used in connection with the first estate, be given a technical meaning to defeat the intent of the grantor thus ascertained.

3. **Deeds and Conveyances — Interpretation — Estates for Life—Expressed Motives.**

Where a deed to lands, by proper interpretation, conveys the fee in remainder after reserving to the grantor and his daughters life estates, the object ·or motive for making the gift to the daughters, stated in the conveyance, will not be permitted to affect the clear intent of the grantor, as gathered from the unambiguous language expressed in the deed construed as a whole, it not being, in this case, inconsistent therewith.

4. **Deeds and Conveyances—Estates for Life—Reservation—Uses and Trusts —Statute of Uses—Estates in Remainder.**

Where the grantor reserves in his conveyance of land a life estate to himself and for the use and benefit of his daughters during their lives, with remainder over to his sons, it is immaterial whether the life estate for the daughters is regarded as reserved directly to them or indirectly through their father, as their trustee, they having the use or equitable estate ; for if reserved to them directly, the statute of uses would merge both the legal and equitable estates in the daughters upon the death of the grantor ; and if reserved to them indirectly through the grantor, at his death the heirs at law would hold the legal title in trust for the daughters during their lives, with remainder over to the sons.

5. **Deeds and Conveyances—Estates for Life—Remainder—Limitation of Actions—Adverse Possession.**

' The grantor of lands, reserving a life estate to himself and for the benefit of his four daughters for their lives, conveyed the remainder to his two sons in fee, who by proper conveyances divided their interest in the lands, expressly referring therein to the reservation of the life estates. Thereafter one of the sons conveyed to the other his estate in the divided lands, and continued to live thereon with his father and sisters until their death. After the death of his father and soon after the death of his last surviving sister, his grantee brought this action for possession of the land, to which he pleaded title by adverse possession and introduced evidence tending only to show that he had lived on the lands with his sisters during their lives and used the rents and profits. *Held*, the evidence was insufficient to be submitted to the jury upon the question of defendant's adverse possession, and judgment should have been entered for the plaintiff.

6. **Same—Happening of Contingency—Time of Entry.**

Where the grantor of lands reserves a life estate in the lands for himself and also for the use and benefit of his daughters during their lives, with limitation over to his sons, who agree to a division of their interest and convey the same to each other by interchangeable deeds, and thereafter one of them conveys his interest to the other, not to take effect until "after the falling in of the life estate of the grantor's daughters," by the terms of this conveyance his grantee's right of entry on the lands, or of possession, does not take effect until the happening of the event stated, and the grantor's possession cannot be considered adverse until then, and at that time only the statute of limitations will commence to run.

7. **Estates Per Autre Vie—Uses and Trusts—Statute of Uses.**

The English law as settled by 29 Charles II., that where there is no special occupant in whom an estate may vest, the tenant *per autre vie* may devise it by will or it shall go to the executors or administrators and be assets in their hands for payment of debts; and by 14 Geo. II., ch. 20, that the surplus of such estates *per autre vie*, after payment of debts, shall go in the course of distribution like a chattel interest, was changed by Revised Code, brought forward in section 128, Rule 11, Code of 1883 (Revisal, sec. 1556), and under our statute the estate *per autre vie* is descendible to the heirs of its owner. But this rule does not apply to the facts of this case, where the estate was held in trust by the donor to the use of his daughters and at his death descended to his heirs at law charged with the trust, or where the statute of uses would execute the legal estate in the daughters for whose use the estate was created.

8. **Deeds and Conveyances—Estates for Life—Remaindermen—Limitation of Actions—Adverse Possession.**

A limitation over to the two sons of the grantor of lands after reserving a life estate in favor of the grantor and his daughters, in which one of the sons conveyed his interest to the other during the continuance of the first estate, and remained in possession with his father and sisters: *Held*, the possession of the grantor was only permissive, and not adverse to the grantee and the daughters remaining in possession, until their death, and the possession of the grantor could not have been adverse, though the statute of uses did not unite in the daughters both the legal and the equitable title.

APPEAL by plaintiff from *Bond, J.,* at June Term, 1914, of EDGE-COMBE.

This is an action to recover the possession of land, and depends for its decision upon the construction of certain deeds and the evidence as to the possession of defendants and those under whom they claim, the nature of which will fully appear by reference to the verdict and charge of the court, which are herein set out.

On 9 March, 1869, Littleberry Brown, common ancestor of plaintiffs and defendants, made a deed to his two sons, Gray L. and Joseph H., by which he conveyed a tract of land, of which the land in controversy is a part. The conveyance to them was as tenants in common of equal interests. In this deed, which is set out in the record, the grantor, in the habendum clause, makes a reservation in the following language, towit: "Reserving and retaining, however, to the said Littleberry Brown an estate in the said land during the life of the said Littleberry and the lives of his four daughters, Rebecca, Martha, Mary, and Lydia; it being the intention and understanding of the said Littleberry Brown and Joseph H. Brown and Gray L. Brown that the said daughters shall and may live on the said land during their lives as members of the family of the said Littleberry Brown during his life, and, after his death, of the family or families of the said Joseph H. Brown and Gray L. Brown." This deed

was at once recorded in the registry of Edgecombe County. A few days later, and during the same month, Joseph and Gray, having agreed upon the parts of the tract that each was to have, executed respectively deeds of release, or partition, by which Joseph released to Gray all his interest in one-half of the land, describing it by metes and bounds, and Gray released to Joseph all his interest in the other one-half of the land, likewise describing it by metes and bounds. These deeds were promptly recorded, and in each of them the same reservation is made as in the original deed from their father, Littleberry Brown, and is adopted as part of each deed, as follows: "Whereas Littleberry Brown of said county has conveyed to his two sons, Joseph H. Brown and Gray L. Brown, a tract of land, situated in said county, containing 210 acres, more or less, reserving an estate for his own life and that of his four daughters, and the said Joseph H. Brown and Gray L. Brown have agreed upon a division of the said land and have ascertained by metes and bounds the part thereof to which each is to be respectively entitled: Now, therefore, this indenture," etc.; then follow the usual words of conveyance. On 30 June, 1876, Joseph H., who is the ancestor of the defendants, conveyed to Gray L., who is the ancestor of the plaintiffs, his one-half of the tract of land, thereby making Gray L. the owner of the whole; but in this deed there is the same reservation as in Littleberry Brown's original deed, it being expressly referred to and adopted as a part of the instrument; and there is this provision after the said reservation: "And the said Joseph H. and Gray L. having agreed between themselves upon a division of the said land, and having ascertained by metes and bounds the part thereof to which each is to be respectively entitled after the falling in of the life estates, and executed deeds of release to each other, and the said Gray L. Brown, being anxious to become the owner of the entire tract, this day purchased the interest of the said Joseph H. for the considerations hereinafter named ($600): Now, therefore, this deed witnesseth," etc. Then follow the words of conveyance. This deed was likewise at once recorded.

The following were admitted by the parties to be the facts: The plaintiffs, as widow and heirs of Gray L. Brown, claim the original one-half, which was conveyed to him by the deed of Littleberry Brown, as an undivided interest subject to the reservation, and assigned to him in the partition by metes and bounds and released to him by deed of Joseph H. Brown, and the other half by the deed of Joseph H. Brown to Gray L. Brown, under all of which deeds the plaintiffs, Gray L. Brown's heirs, claim all of the land, that piece in dispute being the one-half of the original tract set apart to Joseph H. Brown when he and Gray L. Brown divided it, which is specifically described in the deed from J. H. Brown to Gray L. Brown.

BROWN *v.* BROWN.

· The defendants claim, as the heirs of Joseph H. Brown, that they own all of that piece set apart by the partition deed from Gray L. Brown to Joseph H. Brown, presumably one-half of the original tract, and being the identical land that Joseph H. Brown purported to convey to Gray L. Brown, and the same described in the complaint.

Littleberry Brown died in 1870 and the last of his four daughters died in August, 1912, prior to the beginning of this action.

It is admitted that the actual rental value of the piece of land in controversy is $125 a year. The plaintiffs do not desire to hold any person, now a party defendant to the action, for any rent except from and after 1 January, 1914, as those under whom defendants claim had possession up to 1 January, 1914. Mrs. Martha Brown, as the widow and devisee ·of Joseph H. Brown, was in actual possession of the land in controversy when the action was begun, and the present defendants are heirs at law or devisees, and were made parties as defendants since them. Ever since the making of the second deed by Joseph H. Brown to Gray L. Brown, in 1876, said Joseph H. Brown, his widow, and heirs at law have remained continuously in possession of the land in dispute, up to the trial of this action, and are still in possession, regularly using and occupying the same for their own purpose and without paying any rent to any other person. In 1869 J. H. Brown was in the actual possession of that piece of land set apart to him by the partition deed from Gray L. Brown, and continued in possession of it until 1876, and thereafter until his death. Neither Joseph H. Brown nor his widow, nor his heirs at law, defendants, have by any overt act recognized any outstanding claim or title to said land since the deed was made by Joseph H. Brown, but have at all times occupied the land continuously and used it for their own purpose, without paying rent to anybody. "During their respective lives and up to the death of each of the four daughters who are mentioned in the deed of Littleberry Brown, they lived, in accordance with the terms of the deed, on the lands described in his deed, alternately living on the land afterwards set apart to Joseph H. Brown and the piece set apart to Gray L. Brown, asserting no title to the property, except the right of occupancy, if any, spoken of in their behalf in the deed from Littleberry Brown."

The jury returned the following verdict:

1. Have the defendants, since deed was made by Joseph H. Brown to Gray L. Brown in 1876, been for more than twenty years prior to the beginning of this action in the actual, open, continuous, notorious possession of the lands in controversy under known and visible lines and boundaries, claiming same as their own and receiving its rents and profits? Answer: "Yes."

2. Did right of plaintiffs, and those under whom plaintiffs claim the possession of the lands in controversy, arise and accrue more than twenty years before the beginning of this action? Answer: "Yes." ·

3. Are the plaintiffs the owners and entitled to the possession of the land sued for? Answer: "No."

Plaintiffs requested that the following instructions be given to the jury:

"1. The plaintiffs pray the court to instruct the jury upon the fact admitted, that the possession of the land by the defendants was not adverse to the plaintiffs until after the death of the last daughter in August, 1912, and that they should answer the first issue 'No.'

"2. The jury are instructed to answer the third issue 'Yes.' "

The court charged the jury: "If you find from the admissions made, by the greater weight of the evidence, that for more than twenty years prior to and next preceding the bringing of this action defendants and those under whom they claim have been in the actual, open, continuous, notorious possession of the land in controversy under known and visible lines and boundaries, claiming same as their own and receiving and using its rents and profits, they should answer the first issue 'Yes'; otherwise, answer it 'No.' "

The court further charged the jury that if they should answer the first issue "Yes," they should also answer the second issue "Yes," being of the opinion that Gray L. Brown, as soon as he got the first (last) deed from Joseph H. Brown, had the right to sue for possession so far as Joseph H. was concerned, leaving the ladies to stay on the land as members of the family.

Plaintiffs excepted to the refusal to give their prayer for instructions, and also to the several instructions as given.

Judgment was entered upon the verdict for defendants, and the plaintiffs excepted thereto and appealed.

*F. S. Spruill and W. O. Howard for plaintiffs.*
*H. A. Gilliam, James H. Pou, and J. M. Norfleet for defendants.*

WALKER, J., after stating the case: We have well-nigh discarded the technical rule of the common law by which a deed was construed, and under which undue prominence and effect had been given to its formal parts and their position in the instrument, to the sacrifice of the real intention of the grantor, and further, by which too much importance was attached to the use of technical language in which the meaning and intention were clothed, all of which resulted in defeating the purpose for which the deed was executed. We have gradually enlarged our view and liberalized our methods, which before were somewhat narrow and con-

tracted, and now we seek after the intention by putting a construction upon the deed as a whole, and not paying too much attention to technical forms of expression, which tended to conceal the true meaning. We now turn on all the light, while formerly it was to some extent shut out, thereby hiding or obscuring the grantor's meaning and disappointing his intention, which, of course, is thwarting the very object of all legal construction. With the evident purpose of doing justice by revealing and not concealing the truth behind ancient and threadbare forms, we have held that all parts of a deed should be given due force and effect. Words deliberately put in a deed, and inserted there for a distinct purpose, are not to be lightly considered or arbitrarily thrust aside, the discovery of the intention of the parties being the first and main object in view; and when it is ascertained, nothing remains to be done but to execute it, without excessive regard for merely technical inaccuracies or formal divisions of the deed. We have adhered to this rule, following the modern English doctrine, from the earliest periods of this Court, and continuously to the present time, as will appear from our decisions. *Campbell v. McArthur*, 9 N. C., 38; *Kea v. Robeson*, 40 N. C., 373; *Rowland v. Rowland*, 93 N. C., 214; *Gudger v. White*, 141 N. C., 507; *Featherstone v. Merrimon*, 148 N. C., 199; *Triplett v. Williams*, 149 N. C., 394. It was early said by *Chief Justice Taylor:* "Words shall always operate according to the intention of the parties, if by law they may, and if they cannot operate in one form, they shall operate in that which by law shall effectuate the intention. This is the more just and rational mode of expounding a deed, for if the intention cannot be ascertained, the rigorous rule is resorted to, from the necessity of taking the deed most strongly against the grantor." *Campbell v. McArthur, supra.* And by *Chief Justice Ruffin,* at a later perior, in *Kea v. Robeson, supra:* "Courts are always desirous of giving effect to instruments according to the intention of the parties, as far as the law will allow. It is so just and reasonable that it should be so that it has long grown into a maxim that favorable constructions are to be put on deeds; *benigne faciendæ sunt interpretationes chartarum, ut res magis valeat quam pereat.* Hence, words, when it can be seen that the parties have so used them, may be received in a sense different from that which is proper to them; and the different parts of the instrument may be transposed in order to carry out the intent." We said in *Gudger v. White, supra:* "It is not difficult by reading the deed to reach a satisfactory conclusion as to what the parties meant, and we are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any

doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice, and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument, 'after looking,' as the phrase is, 'at the four corners of it.' " See, also, *Real Estate Co. v. Bland,* 152 N. C., 225; *Puckett v. Morgan,* 158 N. C., 344. An effort should be made to give some meaning, and the correct one, to the deed, if possible. If the effort is doomed to failure by reason of uncertainty or repugnancy, so that we cannot ascertain the meaning by any fair rule of construction, or by reason of its ambiguity of expression, so that we are unable to understand, from the language of the deed, who are the parties or what is the subject-matter, or if they be known, what estate is conveyed, or any other matter essential to its validity, the instrument, of necessity, must fail. *Kea v. Robeson, supra.*

Let us examine these deeds in the light of the foregoing principles. We will first consider the deed from Littleberry Brown to his sons. It is manifest therefrom that the grantor intended to convey to his two sons the fee in the land after a life estate in himself, for his own benefit, and also for the use and benefit of his four daughters during their joint lives and the life of the survivor of them. It makes no difference that this intent is gathered from the habendum clause, while in the premises an estate absolute and in fee is given to the sons, for all parts of the deed must be taken and construed together, as was expressly held in *Triplett v. Williams, supra,* where the habendum was allowed to cut down the fee conveyed in the premises to an estate for life, although, at first glance, and without distinctly regarding the real intention, the two estates, according to the words when separately construed, appeared to be repugnant to each other. The language of this deed is even more explicit than was the deed of John Greenwood to Margaret Greenwood in the *Triplett case.* It expressly "reserves and retains" to Littleberry Brown, for his life, an estate for his own life and benefit, and for that of·his four daughters, for their use, during their lives. We attach no importance to the use of the technical word, "reserves," but will give it the meaning which will subserve the intention, which is, that he did not convey to his sons so much of the estate in the lands as was necessary to create a life estate in him, for himself and his daughters, and it is the same as if he had first conveyed such a life estate with remainder in fee to his said sons, for the deed must operate according to the intention, giving, of course, due regard to words when apparently used in a technical sense. Again, it may be said that the deed expressly, and not by mere implication, excepts from its operation the life estates of the grantor and his daughters. The statement in the deed of the object in making it, or the motive for the

gift to his daughters, is not material to a proper construction of it, and should not change its evident meaning, when ascertained by unambiguous language, which is plainly sufficient to create a life estate in them. It merely shows that they were the objects of his first concern, and that he was making provision of a home for them. The best way to safeguard the execution of this purpose was to invest them with the title, legal or equitable, for their lives, and not rely solely upon the covenant of the sons, who might or might not be faithful or loyal to his injunction, that the daughters should live with them, singly, jointly, or alternately, on the land. This construction is greatly strengthened by the meaning which the parties have attached to the deed, in their subsequent conveyances for the purpose of partition, and in the deed of his several interest by Joseph H. Brown to Gray L. Brown. All of them recite that Littleberry Brown, by his deed, had reserved an estate to himself for his own life and the lives of his daughters. . The expression is substantially this: "Whereas Littleberry Brown has conveyed to Joseph H. and Gray L. Brown a tract of land containing 210 acres, more or less," reserving an estate for his life and that of his four daughters. They then proceed to make partition by the deeds, conveying a several portion, by metes and bounds, each to the other. The deed of Joseph H. Brown, for his share, to Gray L. Brown, is even more explicit in this respect, for it not only contains the above recital as to the life estates reserved, but adds these most significant words: "And the said Joseph H. and Gray L. Brown, having agreed between themselves upon a division of the said land, and having ascertained, by metes and bounds, the part thereof to which each is to be entitled *after the falling in of the life estates,"* etc. We do not think it makes any difference whether we consider the life estate for the daughters as reserved directly to them or indirectly, through their father, as their trustee, they having the use or equitable estate. If the latter is the correct interpretation, and the trust is not a simple one which the statute does not execute by transferring to the use the legal estate, the latter, at the death of Littleberry Brown, descended to his heirs for the benefit of the said daughters, they holding it in the same plight as their father did. If, in answer to this, it be said that the reservation was to Littleberry Brown only for his life, and the legal estate did not, therefore, descend, our reply is that the law implies such an estate in Littleberry Brown as is sufficient to support the use, or as is commensurate with the probable exigencies of the trust; and that, in this case, would be a fee, even without express words of inheritance annexed to the grant, as it was not only permissible, but actually necessary to extend the limitation beyond the life of Littleberry Brown. This rule will always be operative in practice when the trust is active and the person entitled to the use, or the *cestui que vie* does or may survive the trustees or him who holds the legal

estate, as in this case. *Smith v. Proctor,* 139 N. C., 314; *Kirkman v. Holland, ibid.,* 185; *Haywood v. Trust Co.,* 149 N. C., 208, 219; *Haywood v. Wright,* 152 N. C., 421, 434, 435. As there is only a simple declaration of a trust in the deed of Littleberry Brown, there is no reason why, after his death, the legal estate and the use should not be merged in his unmarried daughters for their lives, or, in other words, why the statute of uses should not execute the unnecessary portion of his estate, whether the same rule would apply before his death or not, so as to make it, in the first instance, an estate, first, for his life, then for their lives, and finally with remainder in fee to the sons. *Cameron v. Hicks,* 141 N. C., at p. 27; *Smith v. Proctor, supra,* at p. 323. The defendants reply to all this by contending that the estate for the lives of the daughters was a chattel interest, prior to the enactment of Revisal, sec. 1556, Rule 11, and would pass to Littleberry Brown's personal representative, and that being so, the possession of defendants and those under whom they claim could be adverse to such representative or to the heirs if the legal estate descended to them, as they had a right of entry during the forty-two years of such possession since the death of Littleberry Brown and failed to avail themselves of it; but we cannot agree to this view. Revisal, sec. 1556, Rule 11, was brought forward from Revised Code, ch. 38, Rule 12, of the Code of 1883, sec. 128, Rule 11, in identical language, as follows: "Every estate for the life of another, not devised, shall be deemed an inheritance of the deceased owner, within the meaning and operation of this chapter." So that in 1870 the same rule was in force as before and since that time. This was a departure from the English law as settled by 29 Charles II., which enacts (according to the ancient rule of law) that where there is no special occupant in whom the estate may vest, the tenant *per autre vie* may devise it by will, or it shall go to the executors or administrators, and be assets in their hands for payment of debts; and the other, that of 14 Geo. II., c. 20, which enacts that the surplus of such estate *per autre vie,* after payment of debts, shall go in a course of distribution like a chattel interest. 2 Blackstone, star pp. 259, 260 (1 vol. of Cooley's 3d Ed., top p. 259). Under our statute the estate *per autre vie* is descendible to the heirs of its owner. But we are not dealing with such an estate, in the strict sense, but with an estate in trust for the lives of the daughters, where the legal estate descended to the heirs of Littleberry Brown charged with the trust, and as the separation of the two estates, the legal estate and the use, was no longer necessary, the statute executed the unnecessary portion of the legal estate in the daughters. The possession of defendants could not be adverse to them, as they were in possession themselves during the whole period of their lives. *Fowle v. Whitley,* 166 N. C., 445. But if the legal estate which descended to the heirs of Littleberry Brown was not executed by

the statute, but remained in them, and the possession was adverse to them, it could only bar the daughters' life estate, as the trust ceased at the end of their lives, and did not extend to the sons. Consequently, only the life interest of the daughters could be acquired by adverse possession, and there was none as against them. There being no right of entry in Gray L. Brown during their lives, he was not barred. *Harris v. Bennett,* 160 N. C., 339, 347, and cases there cited.

But there is another view of the matter. The deed of Joseph H. Brown to his brother, Gray L. Brown, expressly provides that the estate thereby conveyed shall not take effect "until after the falling in of the life estates" of the daughters, and also recognizes the existence of such life estates, as do the partition deeds executed between them. This being so, whatever the true construction of the Littleberry Brown deed may be, and even if it only provided for them a home and did not convey to them a life interest, the recitals and agreement in the deeds above mentioned would prevent the estate from taking effect until the death of the daughters. While the agreement might not alter the construction of the former deed, or create any new estate for life in them by way of conveyance, it would, at least, suspend the vesting of the estate, under the Joseph H. Brown deed, until their deaths. It was so held substantially in the case of *In re Dixon,* 156 N. C., 26, 28, where R. A. L. Carr conveyed land to his daughter, "reserving a life interest to himself and wife," and the reservation was held to be valid and the estate did not vest in the daughter until after his own death and that of his wife, "although the exception in favor of the grantor's wife did not operate as a conveyance to her." See, also, *Sasser v. Blythe,* 2 N. C., 59; *Baggett v. Jackson,* 160 N. C., 31; *Thomas v. Bunch,* 158 N. C., 175; *Jones v. Whichard,* 163 N. C., 241; *Jones v. Sandlin,* 160 N. C., 150. But taking a still broader view of the case, the heirs of Joseph H. Brown will not be heard to assert that his and their possession was adverse to Gray L. Brown and his heirs, in the face of the express recitals and stipulations in the deeds. To say the least, it would be unjust and inequitable to permit such an advantage to be taken of the possession, even though long continued and accompanied by the receipt of rents and profits, when Gray L. Brown's right of action was not to accrue until the death of the last surviving daughter of Littleberry Brown. The terms of the deeds were sufficient to lull him and his heirs into a sense of security against any such claim. If the daughters did not acquire an estate during their lives, but merely the right of a home, and Gray and Joseph remained tenants in common until their deaths, the adverse possession, if it existed, could only bar this joint interest, and the right of Gray and his representatives to an account and payment of his share of the rents and profits received by Joseph; but as to the several interest of Joseph, which he conveyed to Gray, there could

be no bar, as it was not to take effect in possession until the surviving daughter's death. The whole case shows that the possession of Joseph was merely permissive, and it was not contemplated that it should operate as a bar to his brother's right in the land. How could Gray L. Brown have· recovered this several interest before the death of the last daughter? If he had sued his brother, who was in possession of the land, he would have been met by the terms of the deed to him, which withheld his right of entry until the happening of that event. It is very true that a party who has conveyed land to another may revest the title in himself, as against his vendee, by his possession, unexplained, continued for twenty years, or by color of title and adverse possession thereunder for seven years. *Wilson v. Brown,* 134 N. C., 400; *Johnson v. Farlow,* 35 N. C., 84; *Scarborough v. Scarborough,* 122 N. C., 234. It was said in *Chatham v. Lansford,* 149 N. C., at p. 365: "Though the mere continued possession of the vendor of land after conveyance executed is not adverse to his vendee, or one claiming under him, yet there is nothing in their relations which will prevent the vendor from acquiring title again by adverse possession. He may disseize his grantee, and by adverse possession for the necessary time bar the latter's entry," citing authorities. It is afterwards said that the same principle applies to a grantor, who afterwards takes a deed for the land from a third party, enters thereon, and continues his possession, under the color, for the requisite time, as he is presumed to have entered and taken possession under such title as he then held. Some of the cases hold that the possession of a grantor continued after the execution of his deed to the grantee is not adverse to the latter until its hostile character· is plainly indicated to the grantee or brought home to him in some way, as he is presumed to hold it in trust for him until that is done. *Connor v. Bell,* 152 Pa. St., 444; *Paldi v. Paldi,* 84 Wis., 346; *Brinkman v. Jones,* 44 Wis., 498. But the authorities are conflicting upon this question, as to what will be necessary to constitute adverse possession under such circumstances, and when the possession has not been transferred by the grantor to his grantee, but simply continued by him after the making of his deed, and we need not enter upon its discussion with a view of deciding it. In *Brinkman v. Jones, supra,* it was held that "the possession of a grantor is presumably adverse to the grantee, where it has continued for a long time after the grant, *and is inconsistent in its nature with the grantee's rights by the terms of his deed,"* which principle is stated in the eleventh headnote of that case. We have already shown that Joseph H. Brown's possession was not inconsistent with the terms of his deed to Gray L. Brown, but entirely consistent therewith.

In no view of the facts, as they appear in the record, can we sustain the judgment. The single question being whether, ·upon ̄the admitted

facts, the defendants have acquired the title by adverse possession, and being of the opinion that they have not, the court should have entered judgment for the plaintiff, upon the facts agreed, for there was nothing for the jury to decide. The defendants excepted to the judgment, which was erroneous. The verdict and judgment will be set aside, and judgment entered in the court below in behalf of the plaintiffs, for the land, and also for the rents and profits from 15 January, 1914, to be ascertained by a jury, unless the parties can agree upon the amount. This meets fully the legal merits of the case.

It would be idle to order a new trial, when there is nothing to be tried, the parties having agreed upon facts sufficient to entitle the plaintiffs to judgment as above set forth.

Error.