On 24 September 1877, Thomas Williams and wife executed and delivered to their son, James W. Williams, a certain deed, marked Exhibit "A" in the case agreed, for the lands described therein. The granting clause in said deed is as follows: "Do give, grant, convey, and *Page 173 
confirm unto James W. Williams, for the term of his natural life, and after his death in remainder to his wife, if she survives him, for her natural life, then to the children of the said James W. Williams, lawfully begotten in marriage, absolutely, and to their heirs."
The habendum is as follows: "To have and to hold the same in manner aforesaid, to him and his wife their lives and to their children and their heirs in fee simple. We, the said Thomas Williams and wife, reserving for ourselves the use of the turpentine and tar on the said land; and we do further, for ourselves and our heirs, hereby warrant and defend the title hereby conveyed against the lawful claims of any and all persons whatsoever."
Upon the execution of the deed the said James W. Williams (161) and wife went into possession of the land. At the time of the execution of the deed James W. Williams was living with his wife, and at said time they had the following children: Ernest Williams, L. F. Williams, Ella Williams, Jesse Williams, Maggie Williams, and Will Williams. On 21 March 1885, the wife of the said James W. Williams died, leaving surviving her James W. Williams, her husband, and the aforesaid children.
After the death of the wife of James W. Williams, the mother of the plaintiffs, and while he (James W. Williams) was a widower, Thomas Williams and wife, on 17 June 1887, executed to the said James W. Williams the deed which is attached to the case and marked
Exhibit "B," the recitals of which are as follows:
"Whereas, Thomas Williams and wife, Mimy Williams, executed to James W. Williams, their son, for a valuable consideration, a deed for one-third interest in and to a tract of land situated in Pitt County, containing two hundred and fifty acres, more or less, said deed was dated on the 24th day of September 1877, and duly recorded in the register's office of Pitt County;
"And whereas, by error of the draftsman, it should have been three hundred acres of land, one-third of which to the said James Williams, and the said Thomas and wife Mimy now desiring to correct said deed so far as they are able, so as to convey and include a one-third undivided interest in the said three hundred acres of land as set forth in the deed of September 24, 1877:
"Now, therefore, this deed, made this 17th day of June, 1887, by Thomas Williams and wife, Mimy, to James W. Williams, all of the County and State aforesaid:
"Witnesseth, That for and in consideration of the above recited premises and the further consideration of the sum of one dollar to us in hand paid, the receipt of which is hereby acknowledged, hath bargained, sold and conveyed, and by these presents doth bargain, sell and *Page 174 
convey unto James W. Williams for the term of his natural life, and after his death in remainder to his wife, if she survives him, for her natural life, then to the children of the said James W. Williams lawfully begotten in marriage, absolutely, and to their heirs in fee simple forever, and undivided one-third interest, part and estate in and to a tract of land situated in Pitt County and said State, and bounded as follows: (Here follows the description.)
"It being intended by this deed to convey with the above conditions and limitations, subject to the life estate in the turpentine and tar on the lands, which is hereby specially reserved unto the said Thomas and Mimy Williams, an undivided one-third interest in the above-described lands and the part assigned for the purposes of this deed, included (162) in the following boundaries: Beginning at John S. Williams' northeast corner line and running north, to wit: (Here follows the description.)
"To have and to hold the same in manner aforesaid to him and his wife their lives and to their children and their heirs in fee simple after the life estate above carried out to the said Thomas and Mimy Williams."
After the execution of both the deeds, James W. Williams remarried, to wit: On 25 October 1888, his second wife being the defendant Puss Williams. There was born of the second marriage the following children: C. B. Williams, Marshall Williams, Thad Williams and Daisy Williams, defendants in this action. On 27 May 1917, James W. Williams died, leaving surviving him the following children by his first marriage: Ernest Williams, L. F. Williams, Ella Williams Moore, Maggie Williams Sutton, and Will Williams, together with five grandchildren, the children of Jesse Williams, a child of the first marriage, who died since the death of his mother; and the following children by his second marriage, to wit: C. B. Williams, Marshall Williams, Thad Williams, and Daisy Williams; and also his widow, the said Puss Williams, the second wife.
Maggie Sutton and Will Williams, two of the children by the first marriage, by good and sufficient deeds have conveyed whatever interest they have in and to the lands described to the plaintiff Ernest Williams. Thad Williams, one of the children of the second marriage, by good and sufficient deed, has conveyed to Ernest Williams any interest that he might have in and to said land.
The plaintiffs, who are the children of the first marriage upon the facts agreed, the substance of which is above set out, contended that upon the death of the said James W. Williams they became the owners in fee and entitled to the immediate possession of said land, free of the claims of the second wife and of the second children. *Page 175 
The defendants, the second children, contended that they are entitled to an equal share in said lands with the plaintiffs. The defendant Puss Williams, the widow by the second marriage, contending that she, under and by virtue of the deeds aforesaid, is the owner of the life estate in and to said lands, and that the children of the first and second marriages share equally, subject to said life estate.
The court, upon the foregoing facts and contentions, held that, under and by virtue of the deeds from Thomas Williams and wife to James W. Williams set out in the case agreed as exhibits "A" and "B," the defendant Puss Williams, wife by the second marriage and widow of James W. Williams, was the owner of a life estate in and to said land, and that the children by the first and second marriages own the remainder in fee as tenants in common, and rendered judgment accordingly, from which judgment the plaintiffs, children by the (163) first marriage, appealed, assigning as error that the court adjudged that they were not the sole owners in fee of the land in controversy.
after stating the case: It is not at all difficult to construe the first deed if we are permitted to look at the entire instrument and to consider one part of it with another, so that the intention of its maker may be determined by all that he has said, and not only by a part thereof and without special regard to the formal arrangement. This Court has repeatedly held that this should be done in order to extract from the language the true meaning of him who used it. Campbell v. McArthur, 9 N.C. 38; Kea v.Robeson, 40 N.C. 373; Rowland v. Rowland, 93 N.C. 214; Gudger v. White,141 N.C. 507; Triplett v. Williams, 149 N.C. 394; Beacon v. Amos,161 N.C. 357; Brown v. Brown, 168 N.C. 4; Gold Mining Co. v. Lumber Co.,170 N.C. 273.
We said in Brown v. Brown, supra: "We have well-nigh discarded the technical rule of the common law by which a deed was construed and under which undue prominence and effect had been given to its formal parts and their position in the instrument to the sacrifice of the real intention of the grantor, and, further, by which too much importance was attached to the use of technical language in which the meaning and intention were clothed, all of which resulted in defeating the purpose for which the deed was executed. We have gradually enlarged our view and liberalized our methods, which before were somewhat narrow and contracted, and now we seek after the intention by putting a construction upon the deed as a whole, and not paying too much *Page 176 
attention to technical forms of expression which tended to conceal the true meaning. We now turn on all the light, while formerly it was to some extent shut out, thereby hiding or obscuring the grantor's meaning and disappointing the intention which, of course, is thwarting the very object of all legal construction. With the evident purpose of doing justice by revealing and not concealing the truth behind ancient and threadbare forms, we have held that all parts of a deed should be given due force and effect. Words deliberately put in a deed and inserted there for a distinct purpose are not to be lightly considered or arbitrarily thrust aside, the discovery of the intention of the parties being the first and main object in view; and when it is ascertained, nothing remains to be done but to execute it without excessive regard for merely technical inaccuracies or formal divisions of the deed. We have adhered to this rule, following the modern English doctrine from (164) the earliest years of this Court and continuously to the present time, as will appear from our decisions," citing the preceding cases and Featherstone v. Merrimon, 148 N.C. 199.
It was said by Chief Justice Taylor in Campbell v. McArthur, supra:
"Words shall always operate according to the intention of the parties, if by law they may; and if they cannot operate in one form, they shall operate in that which by law shall effectuate the intention. This is the more just and rational made of expounding a deed, for if the intention cannot be ascertained, the rigorous rule is resorted to, from the necessity of taking the deed most strongly against the grantor."
And Chief Justice Ruffin said, at a later period, in Kea v. Robeson,supra: "Courts are always desirous of giving effect to instruments according to the intention of the parties, as far as the law will allow. It is so just and reasonable that it should be so that it has long grown into a maxim that favorable constructions are to be put on deeds; benignefaciendae sunt interpretationes chartarum, ut res magis valeat quam pereat. Hence, words, when it can be seen that the parties have so used them, may be received in a sense different from that which is proper to them; and the different parts of the instrument may be transposed in order to carry out the intent."
It is clear, from a reading of this deed, giving to each part its proper weight and significance, what the parties intended as to who should take under it. We are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice and *Page 177 
adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument "after looking," as the phrase is, "at the four corners of it." See Real Estate Co. v. Bland, 152 N.C. 225; Puckett v. Morgan, 158 N.C. 344.
An effort should be made to give some meaning, and the correct one, to the deed, if possible. If the effort is doomed to failure by reason of uncertainty or repugnancy, so that we cannot ascertain the meaning by any fair rule of construction, or by reason of its ambiguity of expression, and we are unable to understand from the language of the deed who are the parties or what is the subject-matter, or if they be known, what estate is conveyed, or any other matter essential to its validity, the instrument, of necessity, must fail. The subject (165) is fully discussed in the foregoing cases.
In applying the principle we do not ignore altogether the ancient rules of law for the interpretation of deeds and other instruments, but we do not allow them to absolutely disappoint the clearly expressed intention. They are valuable aids in construction and are retained, and frequently resorted to, for the purpose of construction, where they do not defeat the very object for which they were adopted. The rule, in one aspect of it, is well stated in 1 Devlin on Deeds, sec. 215, as follows; "It may be formulated as a rule that where it is impossible to determine from the deed and surrounding circumstances that the grantor intended the habendum to control, the granting words will govern, but if it clearly appears that it was the intention of the grantor to enlarge or restrict the granting clause by the habendum the latter must control."
See Dodine v. Arthur, 91 Ky. 53, where it is said: "It is undoubtedly true that in case of repugnancy between the two, and it cannot be determined from the whole instrument with reasonable certainty that the grantor intended that the habendum should control, the conveying clause must, for the reason that words of conveyance are necessary to the passage of the title, and the habendum is not ordinarily an indispensable part of a deed. Hence, in the case above indicated, the conveyancing clause must control. But where it appears from the whole conveyance and attending circumstances that the grantor intended the habendum to enlarge, restrict, or impugn the conveying clause, the habendum must control. It is in such case to be considered as an addendum or proviso to the conveyancing clause, which, by a well-settled rule of construction, must control the conveying clause or premises even to the extent of destroying the effect of the same. This *Page 178 
is so, because it is the last expression of the grantor as to the conveyance, which must control the preceding expression."
See, also, Ratliffe v. Mars, 7 S.W. 395; Fogarty v. Stack, 8 S.W. Rep. (Tenn.), 846; Henderson v. Mack, 82 Ky. 379. And in Barnett v. Barnett,104 Cal. 298, the Court states the rule with reference to a joint consideration of the premises and habendum of a deed, as follows: "For the purpose of ascertaining the intention, the entire instrument, the habendum as well as the premises, is to be considered, and if it appears from such consideration that the grantor intended by the habendum clause to restrict or limit the estate named in the granting clause, the habendum will prevail over the granting clause." Moore v. Waco, 85 Tex. 206[85 Tex. 206] [85 Tex. 206].
All parts of a deed should be given due force and effect. Doren v.Gillum, 136 Ind. 134. The premises of a deed are often expressed in general terms, admitting of various explanations in a subsequent (166) part of the deed. Such explanations are usually found in the habendum. Carson v. McCaslin, 60 Ind. 334. Words deliberately put in a deed, and inserted there for a purpose, are not to be lightly considered, or arbitrarily thrust aside. Mining Co. v. Becklenheimer,102 Ind. 76. To discover the intention of the parties is the main object of all constructions. When the intention of the parties can be ascertained, nothing remains but to effectuate that intention. Elliott v.Jefferson, 133 N.C. 215; Salisbury v. Andrews, 19 Pick. (Mass.), 250;Walsh v. Hill, 38 Cal. 481.
Jones on Real Property, vol. 1, sec. 568, says: "The inclination of many courts at the present day is to regard the whole instrument without reference to formal divisions. The deed is so construed, if possible, as to give effect to all its provisions, and thus effectuate the intention of the parties. When an instrument is informal, the interest transferred by it depends not so much upon the words and phrases it contains as upon the intention of the parties as indicated by the whole instrument."
We close this partial array of the authorities with the declaration of this Court, as to the soundness and scope of the rule, especially when applied to a case like the present, as follows: "We concede all that is contended for as to the common law rule of construction, and that it has been followed in this State. But this doctrine, which regarded the granting clause and the habendum and tenendum as separate and independent portions of the same instrument, each with its especial function, is becoming obsolete in this country, and a more liberal and enlightened rule of construction obtains, which looks at the whole instrument without reference to formal divisions, in order to ascertain the intention of the parties, and does not permit antiquated technicalities to override the plainly expressed intention of the grantor, and does *Page 179 
not regard as very material the part of the deed in which such intention is manifested. This is not only the decided trend of modern adjudication, but it is the legitimate and necessary result of legislation in this and other States." Triplett v. Williams, 149 N.C. 396.
That case is especially controlling here, as it relates to a similar question of construction. There, in the premises, the land was granted "unto Margaret Greenwood and her heirs forever," while this was the habendum: "To have and to hold the same, together with all privileges and appurtenances thereto belonging to herself, the said Margaret Greenwood, during her lifetime, and at her death said land is to be equally divided between the children of said Margaret Greenwood." The Court said that, at common law as decided in previous decisions of this Court, the habendum and tenendum clause could not divest an estate granted in the premises (2 Blackstone's Com., 298; 4 Kent. Com. 468; Hafner v. Irwin, 20 N.C. 570), and if the ancient rule was followed, and technical and formal parts of the deed according to the functions assigned to each, were allowed to (167) govern, that result would be reached, though it apparently defeated the intention of the grantor, but that the modern rule was more liberal and, of course, more rational, and that we should not be restricted to any particular clause, but read the deed, as a whole, and then ascertain the real intention of the grantor.
We could not find an authority more directly and fully in point than Triplett v. Williams, supra, as it permits us to construe the habendum with the premises, in order to declare what estate was conveyed by the deed, and, by the same token, what parties were designated to take under it. InGudger v. White, supra, we applied the same rule, following Kea v. Robeson,supra, and other previous decisions. Those cases are analogous and are all governed by the same enlightened rule of construction, which has been recognized by Courts, English and American, for far more than a century. The Court said, in Triplett v. Williams, supra. at p. 397: "We can see no reason why the manifest intention of the grantor should be so carefully regarded in determining what property his deed covers and so entirely disregard in determining what estate in that property the grantee shall take."
If we apply this rule, now well settled, to the language of the deed in question, there can be no doubt that the grantors intended to convey the land to their son for the term of his natural life remainder to his then wife, if she survived him, for her life, and then over to the children of the first marriage, and that neither the widow of James W. Williams nor the children of the second marriage (her children by him) have any estate or interest in the same. The habendum shows, with absolute certainty the intention to have been that the conveyance *Page 180 
of the land should be restricted to the son, his then wife, and theirchildren, which necessarily excludes all others. The grantors evidently meant, at the time they executed the deed, that the heirs of their son would be his children by his wife, who was then living, and their descendants.
The judgment is reversed, and the case remanded, with directions to enter judgment in the Superior Court according to this opinion and the agreement of the parties as appears in the record.
Reversed.
Cited: Hutton v. Horton, 178 N.C. 550; Seawell v. Hall, 185 N.C. 83;Shephard v. Horton, 188 N.C. 789; Boyd v. Campbell, 192 N.C. 401; Mitchellv. Heckstall, 194 N.C. 270; Turner v. Turner, 195 N.C. 372; Bryant v.Shields, 220 N.C. 633; Ingram v. Easeley, 227 N.C. 444; Dull v. Dull,232 N.C. 484; Moore v. Whitley, 234 N.C. 154; Sutton v. Sutton,236 N.C. 498; Griffin v. Springer, 244 N.C. 99, 101; Powell v. Roberson,246 N.C. 608.
(168)