### ADELIA SEAWELL v. R. D. HALL.

(Filed 7 March, 1923.)

**1. Deeds and Conveyances—Intent—Interpretation—Ambiguities.**

By the modern rules, technicalities and the placing of the formal parts of a deed must, in their interpretation, give way to the intent of the parties ascertained from the language of the entire instrument, and where the intent is in doubt, resort may sometimes be had to extraneous circumstances surrounding the testator at the time of the execution of the instrument.

**2. Same—Formal Parts—Conveying and Habendum Clauses.**

Under the rule interpreting a deed so that the intent of the parties shall prevail as gathered from the language of the entire instrument, the importance formerly attached to the formal parts giving significance to their placing in the instrument, etc., must be subordinated to this intent when properly ascertained; and where, from the *habendum*, construed with the conveyancing clause, this dominant intent clearly appears, it will be given effect.

**3. Same—Repugnant Clauses—Title—Fee Simple—Defeasible Fee—De Donis—Statutes.**

In the conveyancing part of a deed an estate to the grantor's grandson "and heirs by his mother and assigns," it appearing that at the time the deed was executed the grantor knew that only the grandson could take thereunder; and in the *habendum* "to their only use and behoof forever": *Held*, there is no repugnancy between these clauses in the deed, and the intent was to convey a fee-simple title to the grandson. The effect of the statute *de donis* upon a fee conditional at common law, and our statute converting a fee tail into a fee-simple estate discussed by ADAMS, J.

**4. Estates—Estates Tail—Statute—Fee Simple.**

Assuming that a conveyance to the grantor's grandson "and heirs by his mother and assigns" conveys an estate to the grantee and a particular class of heirs, as distinguished from heirs general, the estate so created would have been an estate tail at common law, converted by our statute into a fee simple.

CONTROVERSY without action, heard by *Daniels, J.,* on facts agreed, at September Term, 1922, of LEE.

On 1 September, 1922, the plaintiff made a contract to execute and deliver to the defendant a deed conveying a tract of land in fee simple, and in pursuance of said contract tendered to the defendant, a deed sufficient in form to convey the land in fee. The defendant refused to accept the deed on the ground that the plaintiff was not able to convey a title in fee simple as he had contracted to do. The land described in the contract and in the deed tendered to the defendant was conveyed to the plaintiff by A. J. Seawell on 24 April, 1915. The material parts of the deed are as follows: "This deed . . . made by A. J. Seawell . . . to Adelai Seawell, . . . witnesseth: That the party of the first part . . . does bargain and sell to said Adelai Seawell and his heirs by his mother and assigns a certain tract of land, . . . reserving his right in said land his lifetime.

"To have and to hold . . . to the said party of the second part, his heirs and assigns, to their use and behoof forever."

The plaintiff is the grandson of A. J. Seawell, and his mother, who was a daughter of A. J. Seawell, died 21 July, 1892, at the plaintiff's birth, and never received any part of her father's estate. The only part of the estate received by the plaintiff is that which is embraced in his

6—185

deed from A. J. Seawell. The plaintiff's father married again, is now living, and has several children born of the second marriage. The plaintiff is the only child of his mother. A. J. Seawell was not married when he executed his deed to the plaintiff. He is dead, and the reserved life estate has terminated.

The defendant contends that the clause to Adelai Seawell and his heirs by his mother vests only a life estate in the grantee, and the plaintiff contends that the conveyance vests an estate in fee.

His Honor held that the plaintiff is not seized of the land in fee, and adjudged that the plaintiff is not entitled to the specific performance of the contract. The plaintiff excepted, and appealed.

*D. B. Teague for plaintiff.*
*No counsel for defendant.*

ADAMS, J. Whatever the technicalities of the law may formerly have required in the construction of deeds, the modern doctrine does not favor the application of such technical rules as will defeat the obvious intention of the grantor—not the unexpressed purpose which may have existed in his mind, of course, but his intention as expressed in the language he has employed; for it is an elementary rule of construction that the intention of the parties shall prevail unless it is in conflict with some unyielding canon of construction or settled rule of property, or is repugnant to the terms of the grant. Such intention, as a general rule, must be sought in the terms of the instrument; but if the words used leave the intention in doubt, resort may be had to the circumstances attending the execution of the instrument and the situation of the parties at that time— the tendency of modern decisions being to treat all uncertainties in a conveyance as ambiguities to be explained by ascertaining in the manner indicated the intention of the parties. Discussing the question in *Gudger v. White,* 141 N. C., 513, *Walker, J.,* pertinently said: "It is not difficult by reading the deed to reach a satisfactory conclusion as to what the parties meant, and we are required by the settled canon of construction so to interpret it as to ascertain and effectuate the intention of the parties. Their meaning, it is true, must be expressed in the instrument; but it is proper to seek for a rational purpose in the language and provisions of the deed, and to construe it consistently with reason and common sense. If there is any doubt entertained as to the real intention, we should reject that interpretation which plainly leads to injustice and adopt that one which conforms more to the presumed meaning, because it does not produce unusual and unjust results. All this is subject, however, to the inflexible rule that the intention must be gathered from the entire instrument 'after looking,' as the phrase is, 'at

the four corners of it.' " *Campbell v. McArthur,* 9 N. C., 33; *Rowland v. Rowland,* 93 N. C., 214; *Triplett v. Williams,* 149 N. C., 394; *Beacom v. Amos,* 161 N. C., 365; *Brown v. Brown,* 168 N. C., 4; *Gold Mining Co. v. Lumber Co.,* 170 N. C., 273; *Williams v. Williams,* 175 N. C., 160; *Hinton v. Vinson,* 180 N. C., 398; *Berry v. Cedar Works,* 184 N. C., 187; 8 R. C. L., 1041; 18 C. J., 252; *Whetstone v. Hunt,* 8 Ann. Ca., 444 n; Devlin on Deeds (3 ed.), secs. 836, 839.

Observing the rule that some effect must be given to every word, and that all the provisions of the instrument must be harmonized if possible, in our interpretation of the deed presented in the record, we must consider not only the *habendum*—"to have and to hold . . . to the said party of the second part, his heirs and assigns," which indicates a fee simple—but also the language in the premises which the appellee assails on the ground of its insufficiency to create a fee, namely, "to said Adelai Seawell and his heirs by his mother and assigns."

In *Wilkins v. Norman,* 139 N. C., 40, and in several other cases, it is suggested as an elementary maxim that when there are repugnant clauses in a deed the first will control and the last will be rejected, but in *Davis v. Frazier,* 150 N. C., 451, and other cases, it is held that this principle must be subordinated to the doctrine heretofore stated, that the intent of the parties as embodied in the entire instrument is the end to be attained, and that a subsequent clause may be rejected as repugnant or irreconcilable only after subjecting the instrument to this controlling principle of construction. *Jones v. Casualty Co.,* 140 N. C., 262; *Midgett v. Meekins,* 160 N. C., 42. Having regard to this principle, we must likewise give effect to another of equal importance, which is this: the office of the *habendum* being to lessen, enlarge, explain, or qualify the estate granted in the premises, the granting clause and the *habendum* must be construed together, and any apparent inconsistency reconciled, if possible, because the *habendum* may control where it clearly manifests the grantor's intention. "It may be formulated as a rule that where it is impossible to determine from the deed and surrounding circumstances that the grantor intended the *habendum* to control, the granting words will govern, but if it clearly appears that it was the intention of the grantor to enlarge or restrict the granting clause by the *habendum,* the latter must control." 1 Devlin on Deeds, sec. 215; *Williams v. Williams,* 175 N. C., 165; *Acker v. Pridgen,* 158 N. C., 337.

As we have said, the *habendum* indicates a fee simple; if the words "by his mother," or even the phrase "and his heirs by his mother," had been omitted, the premises also would have conveyed a fee. C. S., 901. It therefore becomes necessary to determine whether the limitation to the grantee's heirs by his mother is repugnant to or irreconcilable with the *habendum.*

The grantee's mother was the grantor's daughter. She died at the birth of the grantee, who is the plaintiff. There are no brothers or sisters or representatives of such on the maternal side, but several brothers and sisters of the half-blood, children of the grantee's father by the second marriage. When the deed was executed the plaintiff's mother had been dead many years, and the grantor knew that the plaintiff was her only child.

At common law a conditional fee was a fee restrained to some particular heirs exclusive of others. 2 Bl., 109. Professor Tiedeman says: "At an early day, as far back as the time of Alfred, it was the custom to limit estates to one and particular heirs, instead of his heirs in general. Generally, it was to the heirs of his body—*i. e.,* his issue, his lineal heirs. But it can be limited to any other class of heirs. If the first taker died leaving no heir of that kind, the estate was defeated and reverted to the donor. But as soon as that class of heirs came into being, as, in the case of an estate to one and the heirs of his body, upon the birth of a child, the condition was held to be so far performed as to permit the tenant to alien or charge the land in fee simple. And the subsequent death of the issue would have no effect upon the purchaser's title. But, if no alienation was made during the life of such heirs presumptive it would revert to the donor upon the death of the tenant, just as if they had never come into being." Real Property, sec. 45.

An estate given to a man and the heirs of his body was called a fee simple on condition that the grantee had issue, and by virtue of the statute *de donis conditionalibus* (13 Ed., 1), a fee conditional limited to the heirs of one's body was denominated a fee tail. Our statute converts estates tail into estates in fee simple, and *Chancellor Kent* says that conditional fees at common law, as known and defined prior to the statute *de donis,* have generally partaken of the fate of estates in fee tail, and have not been revived in this country. 4 Kent's Com., 15.

Now, let us apply these principles. It is obvious that the estate described in the premises is neither a life estate nor a fee tail, and that the grantor did not intend to include in the words "heirs by his mother" other children of the grantee's mother, for he knew there were none; and if the granting clause could possibly be construed as an estate to the grantee and his collateral heirs on his mother's side defeasible upon the failure of such heirs or as an intent to limit the estate to any particular line of descent as a fee conditional at common law, such estate is enlarged by the *habendum* into an absolute fee simple. Our conclusion is, therefore, that the plaintiff is seized of an estate in fee and is entitled to the specific performance of his contract. The judgment of the Superior Court is

Reversed.