DELIA MONK, ODEL K. BENNETT, JULIA MAE HOLMES, LETHA WIL-
LIAMS, BETTY C. INGRAM, PEARL C. BENNETT, JOHN COLE,
EDWARD KORNEGAY, MARSHALL KORNEGAY, MAMIE C. EVANS,
SANFORD COLE, COLLIE L. COLE, MARION COLE, RAYMOND COLE,
OWEN COLE, JOHN HENRY COLE, AND MAUDE C. LAWSON, V. WIL-
LIAM TAFT KORNEGAY AND LEM KORNEGAY, TRUSTEES, AND WIL-
LIAM TAFT KORNEGAY AND WIFE, ORA KORNEGAY; LEM KORNE-
GAY AND WIFE, ELSIE D. KORNEGAY; JAMES RAYNOR, ANNIE
MAY RAYNOR (MINOR), CATHERINE RAYNOR (MINOR), ESTENE
RAYNOR (MINOR), MAMIE RAYNOR (MINOR), REPRESENTED HEREIN BY
JAMES RAYNOR, THEIR GUARDIAN AD LITEM; JOHN ROBERT KORNE-
GAY, WILLIAM KORNEGAY AND WIFE, VIRGINIA KORNEGAY;
MARY LOU KORNEGAY, MINNIE IRENE McLEAN AND HUSBAND,
CHESTER McLEAN; LILLY KORNEGAY, EARL KORNEGAY AND
WIFE, MAYBELLE KORNEGAY; WILEY KORNEGAY, EVASTUS
BRITT, LILLY MAE BRITT (MINOR), REPRESENTED HEREIN BY EVAS-
TUS BRITT, HER GUARDIAN AD LITEM; AND JOHN B. WILLIAMS, JR.,
GUARDIAN AD LITEM FOR THE CHILDREN AND HEIRS AT LAW OF MINERVA
COLE SHAW; AND THE OWNERS OF ANY SHARES, BOTH IN BEING AND
NOT IN BEING, WHO ARE UNKNOWN AND UNREPRESENTED.

(Filed 12 April, 1944.)

**1. Deeds § 11—**

Ordinarily, the intent of the grantor must be found within the four
corners of the deed.

**2. Same—**

But when the intent materially depends on ambiguous or equivocal ex-
pressions, resort may be had to evidence *de hors* the deed to explain its
terms; and such evidence may include the circumstances attending its
execution, the relation of the parties to each other and to the property
and generally all sources of inquiry as to things which might have acted
on the mind of the grantor.

**3. Same—**

Where an ancestor, by deeds delivered and recorded at one and the same
time, makes a division of all of his property among his children and
grandchildren of two marriages and his second wife, declaring in the deeds
for the benefit of the children and grandchildren of the first marriage that
the property thereby conveyed is an advance in full of their share of the
grantor's estate and reciting in the deed for the benefit of second wife and
her children and grandchildren that the same should include "any other
children that are born to said grantor in lawful wedlock," the words "any
other children born to said grantor in lawful wedlock" do not include
grantor's children of the first marriage.

APPEAL by plaintiffs from *Stevens, J.,* at September Term, 1943, of
SAMPSON.

The plaintiffs, claiming that they, with the named defendants, were
tenants in common of the lands described, filed a petition for partition

thereof. Certain of the defendants answered, pleading that they were solely seized and possessed of the said lands and denying that petitioners had any interest therein. The case was duly transferred to the civil issue docket, and was heard by Stevens, J., at September Term, 1943, of Sampson Superior Court, the parties waiving jury trial.

From admissions of uncontroverted facts, and the record evidence, the following appears to comprise the facts:

Richard Kornegay, from whom all the parties, plaintiff and defendant, derive title, was married twice. By the first wife he had seven children— three sons and four daughters; and by the second wife he had three children. At the time of the execution of the deeds hereinafter mentioned, all these children were living, as well as Annie Kornegay, the second wife. Both Annie Kornegay and Richard Kornegay are now dead.

The group of plaintiffs is made up of some of the living children of the first marriage and descendants of those deceased, while other members of this class not joining in the petition are made parties defendant. Parties defendant are made up principally from children of the second marriage and those of the first marriage, and their descendants, as did not join in the petition. All of the parties plaintiff and parties defendant are descendants of Richard Kornegay, and are his sole heirs at law.

Of the 17-acre tract of land described in the petition, it appears that this was sold under a mortgage deed, by order of court, and became the property of Annie Monk, and was thus withdrawn from the controversy by the findings of the trial judge. Of the 99-acre tract described in the petition, the following disposition was made by Richard Kornegay, above designated as the common ancestor of all the parties:

On 10 January, 1914, Kornegay conveyed parcels thereof as follows: To his son, John R. Kornegay, son of the grantor by his first wife, for life, with remainder to Callie, Clio, Pauline, Katie, and Richard Kornegay, Jr. (children of John R.) in trust "for themselves and any other children of John Robert Kornegay, born in wedlock, their heirs and assigns," etc. The land is charged with $200, interest bearing until paid, in favor of Ida K. Underwood, a full sister and daughter of grantor's first marriage. The deed contains the following provision:

"This deed is made as an advancement in full to the said grantee of his entire share in the real and personal estate of the grantors, Richard and Annie Kornegay, and the said grantee, nor his heirs nor assigns, shall not have any other share in the estate of either of us, and by accepting this deed, and putting same to record, he hereby agrees to the same."

On the same day—10 January, 1914—he executed two other similar deeds, respectively conveying to Jim Kornegay, son of the first marriage, a life estate in another parcel of this tract, with remainder to the named children of the said Jim Kornegay, in trust for themselves "and any

other children that may be and are born of said Jim Kornegay in lawful wedlock," in fee, containing a charge upon the land for $200, to be paid to Delia Monk, and providing that the deed is made in full advancement of all the share that Jim Kornegay is to have in the estates, real and personal, of the grantor and his wife, and constituting the deed as an acceptance of that condition; and another deed of a similar nature to Wiley Kornegay for life, and to Earl, Julia May, Lela, and Letha Kornegay, children of Wiley, as trustees for themselves and "any other children that are born to said Wiley Kornegay in lawful wedlock," in fee. As appears in the other deeds, this deed is to be recorded as an advancement to Wiley K. Kornegay of his entire share in the estate of the grantors, and provides a charge upon the land in favor of Ola Cole in the sum of $200, to draw interest from the death of Richard Kornegay.

Upon the same day, Richard Kornegay and wife conveyed to Georgianna Kornegay, an unmarried daughter of the first marriage, a life estate in 5 acres of land in full advancement of her share in the estate of the grantors "except what we give her before our death."

These provisions comprise in their terms all of the children of the first marriage, and their descendants, and make no provision for those of the second marriage.

On the same day, Richard Kornegay and wife made a conveyance to Annie Kornegay, and others, reading as follows:

"NORTH CAROLINA, SAMPSON COUNTY.

"This Indenture, made and entered into this January 10, 1914, by and between Richard Kornegay and wife, Annie Kornegay, and Annie Kornegay, Metta Kornegay, William Taft Kornegay, and Lem Kornegay, the last three being trustees.

"Witnesseth: That the parties of the first part for and in consideration of the love and affection that they bear to the parties of the second part, and for the sum of One Dollar in hand paid, the receipt of which is hereby acknowledged, have bargained and sold, and conveyed, and by these presents do hereby bargain, sell and convey unto the said Annie Kornegay, wife of Richard Kornegay, for the term of her widowhood, after the death of Richard Kornegay, who hereby reserves his life estate in all of the hereinafter described property, and after she dies or remarries then to Metta Kornegay, William Taft Kornegay, and Lem Kornegay, Trustees for themselves and all other children that are born to Richard Kornegay, the grantor herein, in remainder, all of the following described property, to wit: All of the personal estate of the said Richard Kornegay that he leaves at his death of any and every description, and also the following described tract of land, to wit:

"Lying in Newton Grove Township, Sampson County, North Carolina, adjoining the lands of C. F. Ingram, and others, and described as follows, to wit: Lying on the west side of J. B. Sutton's mill pond beginning at a blackgum stump in the mouth of a small branch in the edge of the high water mark; thence up said branch to a pine stump on the new road; thence up the new road as it meanders to a stake, C. F. Ingram's corner; thence his line, N. 35 E. 64 poles to a stump, said Ingram's corner, in James Ingram's line; thence his line, N. 64 E. 51 poles to a stake, said James Ingram's corner in an old field; thence his line, N. 44 E. 24 poles· to a poplar on the run of Cow Bone Branch; thence down the run of said branch to the high water mark of the Sutton mill pond; thence with the edge of high water mark to the beginning, containing 99 acres, more or less, saving and excepting from the said lands two tracts of 29 and 28 acres respectively, this day conveyed off to Wiley Kornegay and others, and to Jim Kornegay and others.

"To Have and to Hold said lands to Annie Kornegay, after the death of Richard Kornegay, for and during her widowhood and no longer, and upon her death or remarriage to Metta Kornegay, William Taft Kornegay, and Lem Kornegay, Trustees for themselves and any and all children that may be and are born to Richard Kornegay, in fee simple.

"And the parties of the first part covenant that they are seized of said lands and premises in fee·simple; that they have a right to convey the same; that same are free and clear from any and all encumbrances, and that they will forever warrant and defend the title to the same against the lawful claims of any and all persons whomsoever. In Testimony Whereof, the parties of the first part have hereunto set their hands and seals, this the day and date first above written."

HIS

RICHARD X KORNEGAY   (SEAL) ·

MARK

ANNIE KORNEGAY         (SEAL)

(Duly acknowledged 31 January, 1914, and recorded on 15 March, 1915.)

All of the deeds here mentioned appear to have been acknowledged 31 January, 1914, and to have been put on record 15 March, 1915.

The defendants further introduced the affidavit of J. Harmon Britt to the effect that he was a magistrate in Newton Grove Township on 10 January, 1914; that he well knew Richard Kornegay, and that the latter had come to him and talked over his property and its disposition, and declared that he wanted to divide it amongst his children during his lifetime; and that at the request of the said Kornegay, and pursuant to his instructions, that he had written for him the deeds above referred to,

all of which were written and executed upon the same date, and with reference thereto the grantor, Kornegay, stated that he had divided his property as "equal as he knew how."

There was further evidence from John Robert Kornegay, a son of the first marriage, that the father, Richard Kornegay, told him that he was dividing the lands and property so as to make an equal division, and that the charges made upon the land would about equal the remaining value of the several parcels, and stated that the deeds and the money paid was an equal division between his children.

To the introduction of the deeds offered by the defendants and to the evidence of Britt and Kornegay, the plaintiffs objected.

Upon the hearing, Judge Stevens found as a fact that the several deeds above described were partition deeds—intended by the grantor, Richard Kornegay, to be a final disposition and division of his property between the beneficiaries in an effort to make the division as equal as possible; and construing them together, held it not to be the intention or effect of the trust set up in the deed proffered by·the plaintiffs to give to the children of the first marriage any interest in the lands therein described. Upon this construction of the several deeds under consideration, he entered judgment in accordance therewith, and from this judgment the plaintiffs appealed.

The controversy here is over the significance of the following expression in the conveyance made to Annie Kornegay and others, above set out: ". . . unto the said Annie Kornegay, wife of Richard Kornegay, for the term of her widowhood, after the death of Richard Kornegay, . . . and after she dies or remarries then to Metta Kornegay, William Taft Kornegay, and Lem Kornegay, Trustees for themselves and all other children *that are born to Richard Kornegay,* the grantor herein, in remainder . . .," and especially relates to the phrase above italicized. The plaintiffs contend that the expression "all other children that are born to Richard Kornegay" includes the children of the first marriage. Certain of the defendants contend that it applies only to after born children of the grantor born to the second marriage.

*Butler & Butler for plaintiffs, appellants.*

*P. D. Herring for defendants, appellees.*

SEAWELL, J. Few judicial expressions have been more widely quoted than that of *Justice Holmes* in *Towne v. Eisner,* 245 U. S., 418, 62 L. Ed., 372: "A word is not a crystal, transparent and unchanged; it is the skin of a living thought, and may vary greatly in color and content according to the circumstances and the time in which it is used." We

think its application to the case under consideration will become clear as we proceed.

Fortunately for the continuity of human knowledge, the more important intellectual edifices which have weathered the ages have not been built wholly of the softer material mentioned by the great jurist. In science and philosophy there are words—and even phrases—of such crystalline structure that they have standardized the wave lengths of human thought for a thousand years. But the common man, in his everyday business, is not expected to select words cut with jewel-like precision, offering facets to every light, if the language afforded them. And we think here we are dealing perhaps as much with the peculiarities of our language as we are with its free and rather casual idiomatic use.

Perhaps the best mode of expression is that which conveys the thought with the least effort on the part of those who are to receive it. But even the most careful propositor ordinarily does not expect his expression to be met with obduracy or a mental attitude which would compel resort to the technique of the dialectician.

Students of semantics tell us our English language suffers the handicap of all analytic languages—it has not the compactness, sometimes not the precision, of more inflectional languages. It may lean more strongly on the awareness or alertness of those to whom the communication is addressed—strict attention to the subject matter, the occasion, and the attendant circumstances—all of which are important in any language. In fact, when we are called upon to find the meaning of words in a document, we discover that in our formal rules of construction we have merely activated those principles which intelligent persons subconsciously and spontaneously apply to the understanding of communications which are addressed to them. Hence, resort to these aids of construction will not be denied by the court where an ambiguity in a written instrument or an equivocal expression upon which the intent materially depends justifies it under the established practice of the court.

The plaintiffs say they belong to the fortunate class of beneficiaries designated generally in the trust set up in the Annie Kornegay deed as those who "are born" to Richard Kornegay—that this expression is grammatically all-inclusive and needs no construction. We think this view is too optimistic. There is about it a suggestion of absolutism and literalness which we do not think justified by the language itself or the circumstances under which it was shown to have been used.

As to the language itself we cannot but refer to the lack of inherent certainty in defining the class intended to be included—due to the varied and accommodating use of the verb "be"—either singly or in combination with other more significant words. We are told that the Greek verb is capable of expressing finer shades of meaning, in the time relation, than

that of any modern language. However, when used in any other sense than to express the mere fact of existence, few "parts of speech" in the English language have less fixed significance than the present indicative of the verb *be*. It is relational in character, often subject to elision without affecting the sense. It is equative, comparative, attributive. It lives by borrowing—and never keeps what it borrows. While its tense form is present, this often denotes a mere currency with some event or circumstance that actually fixes the time relation. It is so versatile that it serves with almost equal facility the past, present and the future, depending on where the speaker stood in time, space, or circumstance, when the utterance was made. It is truly the universal joint of the linguistic machinery.

The expression over which the controversy is pitched is "any other children that are born to said Richard Kornegay in lawful wedlock." Does this reference include plaintiffs, children of the first marriage, who have already been born to Richard Kornegay, or does it refer to the children of the second marriage who may be born to him during the subsistence of a trust made, in part, for their benefit?

Ordinarily, the intent of the grantor must be found "within the four corners of the deed." *Triplett v. Williams,* 149 N. C., 294, 63 S. E., 70. But where the intent materially depends on ambiguous or equivocal expressions, resort may be had to extrinsic aids to construction, within the bounds of established practice. We think the facts of this case justify the admission of evidence *dehors* the deed to explain its terms. Once this is conceded, it follows that the instrument, in the respect thus aided, must be considered in the light of the circumstances attending its execution in order to discern the intent of the grantor. Among the circumstances to be considered are the relation of the parties to each other and to the property, and generally all sources of inquiry as to things which might have acted on the mind of the grantor. *Central Bank & Trust Co. v. Wyatt,* 189 N. C., 107, 129 S. E., 93; *Seawell v. Hall,* 185 N. C., 80, 116 S. E., 189; *Patrick v. Jefferson Standard Life Ins. Co.,* 176 N. C., 660, 97 S. E., 657. We do not find the evidence introduced for this purpose objectionable in content or mode of presentation. *Allen v. Allen,* 213 N. C., 264, 195 S. E., 801.

In the light of the material from which the trial court had to draw its conclusions, the whole matter may be summed up in this: The plaintiffs argue that if the grantor had intended to exclude them from the trust set up in the Annie Kornegay deed, he could have done so in direct terms. The defendants reply that if he had intended to include the plaintiffs, the whole vocabulary was open to him with which to say so. We are inclined to think the edge of the argument is with the defendants. However, the trial judge, in effect, suggests to both sides that more importance should

be attached to the groove in which the Kornegay mind was probably working when the provisions of the deed were formulated. All the deeds were concurrently executed. He had just provided for the children of the first marriage, of whom there would be no more, and expressly stated that the gift constituted all of his estate he intended them to have. Presumably, he turned to his second, living, wife, and the children of that marriage, to provide for them in turn. He had remarried late in life. There were three children of this marriage *in esse,* and the possibility of more, born to him. There was the further possibility, mentioned elsewhere in the deed, that this wife might remarry after his death, and in that event she might have children for the second husband. It is reasonable to suppose that he did the natural thing under such circumstances—took care of his wife, the children already born of the marriage, and those which might still be born to him, without further thought of those for whom he had provided in the contemporaneously executed deeds.

A naked trust of this kind could have but one purpose—to negative the exclusiveness of the named children as beneficiaries of the gift and put them on an equal footing with children of the same class, born to Kornegay of that marriage. The same device is used in all the contemporary deeds for this purpose. *Contra* the category thus set up, the plaintiffs demand to be admitted to the benefits of the trust, under its general provision, *sine nomine,* although their names were well known, to the exclusion of children who might afterwards be born to the grantor by the second marriage, and for whom every principle of parental affection and social duty demanded consideration. Under these circumstances, we are of opinion that the court below correctly construed the disputed clause in the deed as not including the plaintiffs.

The construction of the deed and determination of the controversy was for the court below upon the deed itself and the evidence adduced. We merely assign reasons that constrain us to affirm the conclusions there reached. The findings of the court were made upon competent evidence, and we find no error of law in the trial.

The judgment is
Affirmed.