The essential parts of the agreed statement of facts upon which this controversy was submitted to the court below, are as follows:
1. Prior to the year 1913, Paul Chatham acquired a tract of land partly lying in the eastern section of the City of Charlotte and partly outside, and caused a map thereof to be made, said map showing 53 blocks and known as Chantilly.
2. Prior to the year 1913, Paul Chatham and wife executed a deed of trust on said property to A. T. Summey, Trustee, which deed of trust is duly recorded. The said deed of trust contained no conditions or restrictions affecting or limiting the use of the property, and the property was not subject to any conditions or limitations affecting its use prior thereto.
3. On 8 July, 1913, Paul Chatham and wife conveyed all of said property shown on the aforesaid map to the Greater Charlotte Finance Realty Company, by deed recorded in the Mecklenburg County Registry in Book 312, page 338, except Blocks Nos. 1, 2 and 44, which were *Page 292 
retained by the grantors. The Greater Charlotte Finance Realty Company caused said map to be recorded in Book 230, pages 248 and 249, in the office of the Register of Deeds for Mecklenburg County, North Carolina.
4. During the years 1913, 1914, 1915, 1916, 1917 and 1918, the Greater Charlotte Finance Realty Company sold 262 lots, located in 26 different blocks, in said development as shown on said map to various purchasers, and the deeds conveying said lots contained no restrictions or conditions limiting or restricting the use and occupancy of said property to residential purposes only.
5. During the years from 1913 to 1918 inclusive, the Greater Charlotte Finance Realty Company conveyed to various purchasers 433 lots of land in said development, and the deeds to said lots contained restrictions and conditions limiting the use and occupancy of said lots for residential purposes only; said deeds contained also provision that any of said property could be released from said restrictions with the written consent of the grantor and then owner of any lot or lots. The lots so conveyed were located in 31 different blocks of the development. During this period the grantor also sold lots in 16 of the same blocks without restrictions.
6. All of the above lots were released by A. T. Summey, Trustee, from the deed of trust referred to herein; during the months of January and February, 1918, the said deed of trust executed by Paul Chatham and wife to A. T. Summey, Trustee, aforesaid, was foreclosed and the said A. T. Summey, Trustee, executed a deed dated 13 February, 1918, to H.L. Taylor, said deed conveying all lots covered by said deed of trust which had not theretofore been released. The said deed to H.L. Taylor conveyed approximately 380 lots, including the locus in quo described in Sales Contract marked "Exhibit A" attached to the complaint in this action. Said deed contained no conditions or restrictions limiting or affecting the use or occupancy of said property.
7. By deed dated 13 February, 1918, H.L. Taylor conveyed the aforesaid lots to the Oakhurst Land Company, said deed being duly recorded. This deed contained no conditions or restrictions limiting or affecting the use or occupancy of said property.
8. Oakhurst Land Company, on 15 February, 1932, executed a deed of trust on said lots to W. B. McClintock, Trustee, securing an indebtedness to the Charlotte National Bank of Charlotte, North Carolina. This deed of trust is duly recorded and contains restrictive covenants as follows: (a) Property not to be owned or occupied by persons of the Negro race; (b) Building located on said property to be located not less than 25 feet from the front property line; (c) Said property to be used for residential purposes only; (d) Building to cost not less than $3,000.00. *Page 293 
9. The aforesaid deed of trust executed to W. B. McClintock, Trustee, was foreclosed by civil action and W. B. McClintock was appointed commissioner to sell the said property and deed was executed by the said W. B. McClintock, Commissioner, to the Charlotte National Bank of Charlotte, North Carolina. The said deed contained restrictive covenants as above set out in paragraph 8.
10. By deed dated 10 April, 1937, the Charlotte National Bank of Charlotte, North Carolina, conveyed said property to D.L. Phillips and wife, Louise E. Phillips, the plaintiffs, said deed being recorded in the Mecklenburg County Registry, in Book 919, page 36. This deed contains the same restrictive provisions as set forth in paragraph 8 above.
11. The Oakhurst Land Company, a corporation and former owner of said property, has been dissolved for a period of more than ten years and has no interest in any property in the development known as Chantilly.
12. In none of the deeds conveying lots in the development known as Chantilly shown on the map hereinabove referred to was there any clause providing for a forfeiture or reverter of title to said lots or any clause of defeasance or for re-entry in event of breach of or failure to perform the conditions or restrictions as set forth in said deeds.
13. The Charlotte National Bank of Charlotte, North Carolina, a banking corporation, has been liquidated more than three years and has no interest in any of the property in said development known as Chantilly.
14. There are approximately 25 business establishments now located within this development, including drug stores, pressing clubs, grocery stores, hardware stores, a moving picture show, gasoline oil station, and other business of similar character. In addition to the above business establishments, there is one church and an industrial plant located in the development.
15. It has been agreed by and between the parties to this action that the plaintiffs are seized of a good and indefeasible fee simple title to the locus in quo, except in so far as such title may be limited or affected by the conditions and restrictions purporting to limit the use and occupancy to residential purposes only, as set forth in the plaintiffs' deed. And it is further agreed by and between the parties hereto that if the court be of the opinion that the plaintiffs' title to the locus in quo
is unrestricted as to its use and occupancy for residential purposes only, and that the deed to the defendant from the plaintiffs will vest in the defendant the right to the use and occupancy for business or other purposes, free and clear from any conditions and restrictions limiting or affecting such use and occupancy other than that they shall not be owned or occupied by persons of the Negro race, and if the court shall so hold, then the *Page 294 
plaintiffs are entitled to a decree of specific performance of said sales contract, otherwise not: Provided that either party may appeal to the Supreme Court from any judgment entered in this cause by the Superior Court.
From a judgment holding the plaintiffs are empowered to convey the locusin quo to the defendant, free from any restrictions as to its use, except that the same cannot be owned or occupied by persons of the Negro race, the defendant excepts and appeals to the Supreme Court, assigning error.
The appellant challenges the correctness of the judgment below. The challenge must fail. The facts presented on this appeal clearly show that the development known as Chantilly is not the result of a general plan or scheme of development of an exclusive residential community. Snyder v.Heath, 185 N.C. 362, 117 S.E. 294; Davis v. Robinson, 189 N.C. 589,127 S.E. 697; Ivey v. Blythe, 193 N.C. 705, 138 S.E. 2; DeLaney v.Hart, 198 N.C. 96, 150 S.E. 702; Eason v. Buffaloe, 198 N.C. 520,152 S.E. 496.
The original owners of the development never sold any of the lots subject to limitations as to use or occupancy. The Greater Charlotte Finance Realty Company sold 262 lots in 26 different blocks of the development and the deeds conveying said lots contained no restrictions or conditions limiting or restricting the use and occupancy of the property. During the same period in which this corporation sold the above lots without restrictions, it also sold 433 lots in 31 of the blocks of the development, restricting the use of the property for residential purposes only. The lots sold without restrictive covenants in the deeds, as well as those sold subject to restrictions, were scattered throughout the development. There is no evidence to support the view that this development was ever subject to any general plan or scheme whereby the restrictive covenants in the deeds referred to above could have been enforced by the grantees inter se. Humphrey v. Beall, 215 N.C. 15, 200 S.E. 918.
Since the locus in quo has never been subject to any general plan of development, the restrictions contained in the conveyances of the Oakhurst Land Company and the Charlotte National Bank, which the plaintiffs contend are null and void, were never enforceable, except as covenants personal to the grantors, and those covenants became unenforceable with the final dissolution and liquidation of the aforesaid corporations. Snyder v. Heath,supra; Thomas v. Rogers, 191 N.C. 736, 133 S.E. 18; DeLaney v. Hart,supra. *Page 295 
The appellant admits that his contract of purchase provides for the retention of the restriction prohibiting any person or persons of the Negro race to own or occupy the locus in quo, but he contends that if the property is not subject to a general plan or scheme for its development as residential property, then this restriction also is unenforceable. The position would be well taken if the appellant had contracted to accept a deed free and clear of all restrictions, but he did not do so. He has agreed to accept a deed that will vest in him a good, indefeasible, fee simple title to the locus in quo "free and clear from any conditions and restrictions limiting or affecting such use and occupancy other than that they shall not be owned or occupied by persons of the Negro race." Therefore, not by virtue of a general plan or scheme, but by agreement, the parties hereto have created a restrictive covenant which is enforceable between the parties. 14 Am. Jur., sec. 309, p. 651.
There is no error in the judgment below, and it is
Affirmed.