C. S. REED v. H. H. ELMORE AND WIFE, BULA T. ELMORE.

(Filed 22 May, 1957.)

**1. Deeds § 11—**

A deed is to be construed to ascertain the intention of grantor and grantee as expressed in the language employed, and when the meaning of the language is in doubt, resort may be had to the circumstances of the parties and the situation dealt with.

**2. Same—**

Doubtful language in a deed must be construed most favorably to grantee.

**3. Deeds § 16b—**

Restrictive covenants are to be strictly construed.

**4. Same—**

A reasonable restrictive covenant which does not materially impair the beneficial enjoyment of the land conveyed and which is not contrary to public policy, is valid and enforceable in the same manner as any other contractual obligation.

**5. Same—**

The owner of contiguous lots conveyed one lot by deed stipulating that the land therein conveyed should be subject to the restriction that no structure should be erected thereon by grantee within a stipulated distance from the public road, and that the restriction should likewise apply to the adjacent lot retained by grantor. *Held:* The deed imposed mutual restrictive servitudes on both lots in the nature of negative easements running with the land. and not mere personal obligations.

**6. Same—**

It is not necessary that the owner of property subject all of it to the same plan of development in order to create restrictive servitudes or easements running with the land in a designated area.

**7. Same—Registered deed creating negative easement on lands retained by grantor held binding on purchasers of servient tenement.**

The owner of contiguous lots conveyed one lot by deed stipulating that the land therein conveyed should be subject to the restriction that no structure should be erected thereon by grantee within a stipulated distance from the public road, and that the restriction should likewise apply to the adjacent lot retained by grantor. The owner thereafter sold the adjacent lot by deed containing no reference to the restriction. *Held:* The grantee of the second lot, as well as his subsequent transferees, is charged with notice of the servitudes imposed upon the second lot by original grantor in his deed to the first lot, since grantees take title subject to duly recorded easements which have been granted by their predecessors in title and which could be discovered by an examination of the records of the deeds or other muniments of title of their grantor. Therefore, the grantee of the first lot is entitled to enforce the restriction against the owner of the second lot by *mesne* conveyances from the common grantor.

Bobbitt, J., concurring.

Denny, J., dissenting.

Winborne, C. J., and Higgins, J., join in dissent.

Appeal by defendants from *Sharp, S. J.,* 22 October, 1956 Special Term of Mecklenburg.

Plaintiff, as permitted by G.S. 1-253, seeks a judgment declaring lands of defendants, purchased from D. H. Walter in 1955, designated as lot 4 on a map prepared by J. W. Spratt in 1936, subject to a restrictive easement or covenant in favor of lot 3, shown on said map, conveyed to plaintiff by Sallie W. Shannon on 18 March 1937. Plaintiff also seeks injunctive relief against threatened violations of his asserted rights. The parties waived a jury trial. The facts as found by the court and stipulated by the parties may be stated as follows:

Mrs. Sallie Shannon, the owner of a tract of land containing 154 acres on the south side of the Pineville-Matthews Road, had it surveyed and subdivided into lots by J. W. Spratt, county surveyor, in October 1936. The property was divided into seven lots of varying acreage. Lot 2, containing 3.75 acres, is situate on the east side of the property. Its northern line is 540 feet southwardly from the Pineville Road. It has no frontage on a public highway. Lot 1, containing 3 acres, joins and is south of lot 2. It has no frontage on a public highway. Lots 1 and 2 are provided access to the public highway by a private road across lot 3.

Lot 3, adjacent to lots 1 and 2, contains 60.65 acres. The lot has a leg 100 feet wide resting on the Pineville Road, extending back or southwardly 540 feet from the road. From this point it broadens to the east, reaching the southeast corner of lot 1. South of the leg which rests on the Pineville Road the lot has a width in excess of 800 feet and a depth approximating a half mile.

Lot 4 adjoins and is to the west of lot 3. It has a frontage of 415 feet on the Pineville Road, extends southwardly from the highway half mile or more, and contains 42.32 acres.

Lot 5 adjoins lot 4. It has a frontage on the Pineville highway of 630 feet, a depth of approximately half a mile, and contains 30.9 acres. Lot 6 fronts 407 feet on the Pineville highway, has a depth of 1,084 feet, and contains 9.5 acres. Lot 7 is at the southwest corner of the subdivision, half a mile or more from the highway. It contains 3.71 acres.

Lots 1 and 2 were sold prior to March 1937. Lot 3 was sold by Mrs. Shannon to plaintiff on 18 March 1937. Plaintiff's deed was recorded 2 April 1937. The description begins in the center of the Pineville Road and proceeds to describe the land conveyed by course and distance in

conformity with the courses and distances of lot 3 shown on the Spratt map. Following the specific description are these provisions:

"The foregoing tract of land is conveyed subject to the easement of a road leading from Pineville-Matthews Road to lot designated No. 2 comprising 3.75 acres and lot designated No. 1 sold to R. L. Welch and the right is hereby reserved to the owners of said Lots 1 and 2 to the use in common of said private road as a means of ingress, regress and egress to and from said tracts of land to the Pineville-Matthews Road.

"The foregoing lands are conveyed subject to the condition or restriction that no structure shall be erected by the grantee within 550 feet of the Pineville-Matthews Road, it being understood and agreed that the 100 foot strip leading to said tract of land from the Pineville-Matthews Road shall not be used for purpose of constructing any building thereon, and this restriction shall likewise apply to Lot No. 4, retained by the grantor, said lot No. 4 being adjacent to lands hereby conveyed."

On 30 April 1942 Mrs. Shannon conveyed lot 4 to Herbert S. Glenn. The description of the land conveyed begins in the center of the Pineville-Matthews Road at the corner of the land conveyed by Mrs. Shannon to plaintiff, giving reference to the book and page where plaintiff's deed is recorded. The description proceeds by course and distance, referring to plaintiff's lines where the land conveyed abuts the land of plaintiff. The courses and distances set out are those shown on the Spratt map as lot 4. The deed contains no restrictions and makes no reference to Mrs. Shannon's deed to plaintiff except as it relates to the courses and distances of the land conveyed.

Glenn, in 1946, conveyed the land he purchased from Mrs. Shannon to McCorkle, who in 1955 conveyed to H. B. Walter and wife. Walter and wife conveyed to defendant in May 1955. The deeds from Glenn, McCorkle, and Walter, all describe the land by metes and bounds as set out in the deed from Mrs. Shannon to Glenn. None of the deeds contained any restriction or made any reference to the deed to plaintiff except in the specific description.

Lots 5, 6, and 7 were conveyed by Mrs. Shannon prior to her deed for lot 4 to Glenn. The deeds for these lots contained no reference to the provision in plaintiff's deed. Mrs. Shannon now has no interest in the property which she caused to be mapped and subdivided by Spratt.

Defendants, when they purchased lot 4 in May 1955, had actual knowledge of the deed from Mrs. Shannon to plaintiff and of the provisions of said deed.

Defendants have caused the property acquired by them from H. B. Walter and wife, including the portion lying within 550 feet of the Pineville-Matthews Road, to be divided into residential building lots

and, unless restrained, will offer said lots for sale for the purpose of erecting residences thereon.

Judge Sharp concluded that the deed from Mrs. Shannon to plaintiff imposed reciprocal negative easements on lot 3 sold to plaintiff and lot 4 retained by Mrs. Shannon, that the building restriction imposed on lot 3 was for the benefit of lot 4 retained by the grantor, and the building restriction imposed on lot 4 was for the benefit of lot 3, and the registration of the deed from Mrs. Shannon to plaintiff put those who thereafter acquired any interest in lot 4 on notice of the servitude imposed on that tract. Defendants in apt time moved to nonsuit. They took exceptions to the court's conclusions of law, excepted to the judgment which was entered in conformity with the conclusions of law, and appealed.

*Taliaferro, Grier, Parker & Poe for plaintiff appellee.*

*Sedberry, Clayton & Sanders and Gaston, Smith & Gaston for defendant appellants.*

RODMAN, J. The question presented for decision is: Do the provisions of the deed from Mrs. Shannon to plaintiff impose mutual restrictive servitudes on the lands then conveyed to plaintiff and retained by Mrs. Shannon, or did the deed merely create mutual personal obligations?

The answer is to be found by ascertaining the intention of grantor and grantee when the sale and purchase was consummated. That must be done by interpreting the language which the parties chose to express that intention. *Stephens Company v. Lisk,* 240 N.C. 289, 82 S.E. 2d 99; *Hine v. Blumenthal,* 239 N.C. 537, 80 S.E. 2d 458; *Spencer v. Jones,* 168 N.C. 291, 84 S.E. 261; *Killian v. Harshaw,* 29 N.C. 497.

If doubt exists as to the meaning of the language used, it is proper to consider the situation of the parties and the situation dealt with. *Monk v. Kornegay,* 224 N.C. 194, 29 S.E. 2d 754; *Carr v. Jimmerson,* 210 N.C. 570, 187 S.E. 800; *Seawell v. Hall,* 185 N.C. 80, 116 S.E. 189; *Patrick v. Ins. Co.,* 176 N.C. 660, 97 S.E. 657; 26 C.J.S. 1095.

"In passing on the intent and effect of these conveyances, which must be gotten from the four corners of the instrument, we are guided by the rule that in resolution of doubt in interpretation the instrument must be construed most favorably to the grantee; *Sheets v. Walsh,* 217 N.C. 32, 38, 6 S.E. 2d 817; *Brown v. Brown,* 168 N.C. 4, 10, 84 S.E. 25; *Krites v. Plott,* 222 N.C. 679, 681, 24 S.E. 2d 531." *Seawell, J.,* in *McKay v. Cameron,* 231 N.C. 658, 58 S.E. 2d 638.

Restrictive servitudes in derogation of the free and unfettered use of land are to be strictly construed so as not to broaden the limitation on the use. *Callaham v. Arenson,* 239 N.C. 619, 80 S.E. 2d 619.

With these well-settled principles in mind we look at the deed from Mrs. Shannon to plaintiff as the gauge by which the rights and obligations of the parties are to be measured. We find that the land conveyed, that is, lot 3, is burdened with an easement for lots 1 and 2 to the Pineville-Matthews Road, which right of way is to be used in common with the owner of lot 3. An examination of the Spratt map filed with the record here would indicate this right of way has a width of less than twenty feet; hence, the grantee had an area of eighty feet or more in width adjoining lot 4, fronting on the Pineville-Matthews Road and extending back from the Pineville-Matthews Road to that width for a distance of 540 feet. This area was his to do with as he pleased unless some restriction was imposed on him or on the land itself. Without such a restriction he could build on it or leave it open as he might desire. If he elected to build, to use it for commercial or residential purposes, as suited his whim. Grantor and grantee agreed that this unrestricted right to use the property was not desirable. Hence, following the provisions providing access to the highway for the land which plaintiff had purchased, as well as for lots 1 and 2, a provision was inserted in the deed which imposes a condition or restriction. Plaintiff's right to use the property which he purchased was circumscribed by this clause: "no structure shall be erected by the grantee within 550 feet of the Pineville-Matthews Road." Had the restriction stopped there, it might be suggested the parties intended only to limit the right of the grantee but did not intend to impose any restraint on any subsequent owner of lot 3. Any such idea is, however, immediately banished by the very next clause which deals with the land itself and not the owner. It says: "it being understood and agreed that the 100 foot strip leading to said tract of land from the Pineville-Matthews Road shall not be used for purpose of constructing any building thereon."

That the restriction imposed on plaintiff and on his land could be enforced is not open to debate. It is said in *Sheets v. Dillon*, 221 N.C. 426, 20 S.E. 2d 344: "The courts have generally sustained covenants restricting the use of property where reasonable, not contrary to public policy, not in restraint of trade and not for the purpose of creating a monopoly—and building restrictions have never been regarded as impolitic. So long as the beneficial enjoyment of the estate is not materially impaired and the public good and interest are not violated such restrictions are valid. Subject to these limitations the court will enforce its restrictions and prohibitions to the same extent that it would lend judicial sanction to any other valid contractual relationship." The principle there stated has been repeatedly recognized. The factual situations in particular cases have not always called for an application of the principle. *Ingle v. Stubbins*, 240 N.C. 382, 82 S.E. 2d 388;

*Higdon v. Jaffa,* 231 N.C. 242, 56 S.E. 2d 661; *Craven County v. Trust Co.,* 237 N.C. 502, 75 S.E. 2d 620; *Phillips v. Wearn,* 226 N.C. 290, 37 S.E. 2d 895; *Eason v. Buffaloe,* 198 N.C. 520, 152 S.E. 496; *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697.

The vast majority of the cases dealing with restrictive covenants grow out of conveyances in which restrictions are imposed on the grantee or on the property conveyed without expressly imposing in the conveyance a similar condition or restriction on the grantor. In those cases, the courts have been called upon to determine whether the grantor intended to impose a restriction for his personal benefit or whether he intended to create a benefit for all of the property that he owned. Where the grantor has, by uniformity of the conditions imposed with respect to a given area, evidenced his intention to create mutual servitudes and benefits, the restrictions are held to be covenants running with the land. Where there is absence of uniform pattern, the intention is not established; hence, the covenants or restrictions or conditions are held to be personal to the grantor. *Ingle v. Stubbins, supra; Craven County v. Trust Co., supra; Phillips v. Wearn, supra; Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197; *Sedberry v. Parsons,* 232 N.C. 707, 62 S.E. 2d 88; *Eason v. Buffaloe, supra.* Uniformity of pattern with respect to a development furnishes evidence of the intent of the grantor to impose restrictions on all of the property and when the intent is ascertained it becomes binding on and enforceable by all immediate grantees as well as subsequent owners of any part of the property; but the fact that there is an absence of uniformity in the deeds does not prevent the owner of one lot from enforcing rights expressly conferred upon him by his contract. "Contractual relations do not disappear as circumstances change." *Vernon v. Realty Co.,* 226 N.C. 58, 36 S.E. 2d 710. The absence of any reference in the deed for lot 4 to the right of way granted lots 1 and 2 does not, because of want of uniformity, destroy the rights accorded those lots.

It is said in *Turner v. Glenn, supra:* "A deed which makes reference to a map or plat incorporates such plat for purposes of a more particular description but does not bind the seller, nothing else appearing, to abide by the scheme of division laid down on that map. The purchaser has no right to understand or believe from such reference that the grantor will in his future conveyances abide by such plan of division." This is an effective if negative way of stating that the grantee who insists that there be inserted in his deed a condition or covenant that the grantor will comply has a right to enforce it. Recognition of the importance of imposing the restriction on the grantor in the deed under which grantee claims is to be found in *Stephens Company v. Binder,* 198 N.C. 295, 151 S.E. 639. *Justice George W. Connor,* holding plaintiff grantor was not bound by restrictive covenants, said: "None of the

REED v. ELMORE.

defendants, claiming under the immediate grantee of the plaintiff, has any right to or easement in lots owned by plaintiff, at the date of its conveyance of the lot now owned by said defendant to its grantee, *by reason of any express covenant on the part of plaintiff.*" (Emphasis added.) *Justice H. G. Connor* stated the rule in the affirmative when he said, in *Milliken v. Denny*, 141 N.C. 224: "If purchasers wish to acquire a right of way or *other easement* over other lands of their grantor, it is very easy to have it so declared in the deed of conveyance." (Emphasis added.)

Plaintiff, when he purchased, heeded the warnings of *Justice Connor* and caused to be inserted in the deed to him this provision: "This restriction shall likewise apply to Lot No. 4, retained by the grantor, said Lot No. 4 being adjacent to lands hereby conveyed." Note the restriction is not on the grantor. It is imposed on the land of grantor. It was a *creation of a servitude* on the land irrespective of ownership. There is no need to search for grantor's intent. It is clearly and distinctly expressed.

What was the restriction? Can there be any doubt that the parties (grantor and grantee) meant and said that no building or structure should be erected on either lot 3 or lot 4 within 550 feet of the Pineville-Matthews Road? So construed there would be an open, unobstructed view of the highway. It is alleged and admitted that plaintiff's home is on lot 3. He has constructed a lake and made other improvements thereon. It may be inferred that the land was purchased for a home and "a quiet and secluded place of abode." In any event, one who has only a limited view of the highway might well deem an open and unobstructed view across his neighbor's land of material benefit and hence insist on imposing a servitude on that land as a condition to its purchase, an "ancient window." *Davis v. Robinson, supra.*

It will be noted that the servitude is expressly limited to lot 4. It has no relation to lots 5 and 6 which lie to the west of lot 4 and front on the road.

We have found no case in our reports which deals with the factual situation here presented. It might have arisen under the deed referred to in *S. v. Suttle*, 115 N.C. 784, if the grantee had undertaken to harvest ice from the mill pond.

It was said in *Norfleet v. Cromwell*, 70 N.C. 634: "The principle is generally conceded, and it is certainly equitable, that when the benefit and burden of a contract are inseparably connected, both must go together, and liability to the burden is a necessary incident to the right to the benefit." Application of the rule is found in *Raby v. Reeves*, 112 N.C. 688; *Walker v. Phelps*, 202 N.C. 344, 162 S.E. 727.

Cases are not wanting, however, on factual situations closely analogous to those we are here considering. In *Coles v. Sims*, decided in

1854, reported 43 Eng. Rep. 768, the Court was called upon to deal with a deed executed in 1823 in which the parties executed mutual covenants that portions of their respective lands should be laid out as a pleasure ground and thereafter used as a flower garden on which no building should be erected. The Court held that the covenant was binding on the grantees of the respective covenantors.

In *McLean v. McKay,* decided by the Privy Council of England in 1873, reported V LRPC 327, the Court was called upon to construe a deed made in 1834. William Forbes, owner of a lot, conveyed a portion thereof to Robert McIntosh. The deed, after describing by metes and bounds the land conveyed, contained this provision: ". . . and by the true intent which was unanimously agreed upon between the parties that any distance which may remain westwardly to *Jury Street* should never be hereafter sold, but left for the common benefit of both parties and their successors." McLean, plaintiff, traced his title to McIntosh, the grantee, and McKay traced his to Forbes, the grantor. McKay had erected a building on the land adjacent to Jury Street. McLean sought injunctive relief. The Court, in announcing its opinion, said: ". . . but construing the clause in the way in which they do, simply as an agreement between the two parties that this space shall be kept open for the advantage of both proprietors, they come to the conclusion that it is one which does not contravene any rule of law, that it creates an equity which binds the present Respondent, and that the Appellant who has the estate of the original vendee is entitled to come to the Court of Equity for its assistance to remove the structure which is placed upon the land in violation of it."

*Nicoll v. Fenning,* decided in 1880, reported 18 Chancery Appeal Cases 258, factually like the present case, held grantees of the grantor bound by his express covenant that he would, as to land retained, "not erect thereon, or use or permit to be used any building to be erected thereon as a tavern, public-house, or beershop."

In *Mann v. Stephens,* decided in 1846, 60 Eng. Rep. 665, the Court was called upon to construe a deed made in 1838 in which the grantor had, with respect to land owned by him adjoining the land sold, provided that it "should forever thereafter remain and be used as a shrubbery or garden, and that no house or other building should be erected on any part of it, except a private house or ornamental cottage, and *that* only on a certain part of it called The Dell, and so as to be an ornament rather than otherwise, to the surrounding property." In 1845 defendant, who had acquired the land to which the covenant related, began the construction of a beer shop and a brewery outside of The Dell. Plaintiff, who traced his title to the original covenantee, sought injunctive relief. The Vice Chancellor expressed the opinion "that the

erecting of the beer-shop and brewery was a gross violation of the covenant." An injunction issued.

The annotator, 37 L.R.A. N.S., at p. 23, in speaking with respect to restrictive covenants, says: "Another, but much rarer, class of cases in which restrictive covenants may be enforced by persons not parties thereto is that in which a vendor, instead of imposing the burden on the property sold for the benefit of that retained, reverses the servitude, laying the restriction on the land retained for the benefit of the land sold. It would seem that the same reasoning ought to apply as well in the one case as the other, and that the rule should here be that such restrictions may be enforced by the grantees of the covenantee against the covenantor or his grantees, but that an action may not be maintained to enforce the restriction between grantees of the servient estate."

In *Murphy v. Ahlberg*, 97 A. 406 (Pa.), the covenant or restriction was stated thus: "It is further agreed that the said second party, his heirs or assigns, shall have the free and unobstructed right of light, air, and prospect over and across the front of any other property now owned by the parties of the first part, lying north of the above described, and includes lot 1 in said partition plan, and that no buildings shall be erected nearer to Bellefield avenue than the present building now on the same. This restriction shall apply to and bind the heirs and assigns of both parties hereto, but shall not prevent the planting of shrubbery or small trees on the front of said lots." The Court held that the covenant applied as to property retained by the grantor, and that he could be enjoined from its violation by erecting on the property which he had retained a building tending to reduce the view of his grantee.

"A covenant not to erect a building on grantor's land in front of the tract conveyed runs with the land, and passes to an assignee without any separate assignment of the covenant." Headnote, *Trustees of Watertown v. Cowen*, decided 1834, reported 4 Paige Ch. 510, 27 Am. Dec. 80.

Similar conclusions with respect to restrictions imposed by grantor on himself are to be found in *Porter v. Denny*, 156 N.Y.S. 1016, and *Feinberg v. Board of Education*, 276 S.W. 823 (Ky.); *Hutchinson v. Ulrich*, 21 L.R. A. 391 (Ill.). The easements imposed are coterminous with the estate granted and retained. *Ruffin v. R. R.*, 151 N.C. 330, 66 S.E. 317.

Lots 3 and 4 comprised 102 acres of Mrs. Shannon's 150-acre tract. The deed from Mrs. Shannon to plaintiff provided a uniform limitation on the use of these two lots. Smaller areas have repeatedly been the subject of a uniform system of development. It is not necessary that all of one's property be subject to the same plan of development, in order to create restrictive servitudes or easements running with the land in a designated area.

By whatever name described, easements, negative easements, incorporeal rights, or servitudes, the reciprocal burdens and benefits were interest in land which could not be created by parol. *Davis v. Robinson, supra; Turner v. Glenn, supra; Borders v. Yarbrough,* 237 N.C. 540, 75 S.E. 2d 541; *Hege v. Sellers,* 241 N.C. 240, 84 S.E. 2d 892.

Being an interest in land, registration of the instrument creating the right was necessary if the owner would protect himself against subsequent purchasers for value. When plaintiff recorded his deed, anyone interested in lot 4 was bound to note, not by implication, but by express language, that Mrs. Shannon had dealt with, imposed a restriction on lot 4. "Grantees take title to lands subject to duly recorded easements which have been granted by their predecessors in title." *Waldrop v. Brevard,* 233 N.C. 26, 62 S.E. 2d 512; *Starmount Co. v. Memorial Park,* 233 N.C. 613, 65 S.E. 2d 134.

Since the deed from Mrs. Shannon to plaintiff, by its express language, dealt with lot 4, it was as much a link in defendant's title as any other disposition of that lot. *Turner v. Glenn, supra,* does not, as appellant contends, hold to the contrary. Properly read and understood, that case supports the conclusion here reached. There no restrictions appeared in the deeds under which plaintiff claimed. Defendants sought to impose restrictions by showing knowledge of parol statements and advertisement when the common ancestor made sale of lots other than the lots of plaintiffs. The fact that plaintiffs knew, or might have known of these parol statements made to purchasers of other lots did not fulfill the requirements of the Connor Act. *Justice Barnhill* says: "A purchaser is chargeable with notice of the existence of the restriction only if a proper search of the public records would have revealed it and it is conclusively presumed that he examined each recorded deed or instrument in his line of title and to know its contents. *Acer v. Westcott,* 46 N.Y. 384, 7 Am. Rep. 355; *Columbia College v. Thacher,* 87 N.Y. 311, 41 Am. Rep. 365; *McPherson v. Rollins,* 107 N.H. 362, 14 N.E. 411; Thompson, Real Property, Vol. 7, p. 106. If the restrictive covenant is contained in a separate instrument or rests in parol and not in a deed in the chain of title and is not referred to in such deed a purchaser, under our registration law, has no constructive notice of it.

"It follows that evidence admitted by the court as to oral statements made by officers of the Realty Company and as to advertisements published in local papers tending to show a general scheme of development of Sunset Hills was incompetent. It has no bearing upon the question presented."

A slightly different factual situation was presented to the Supreme Court of Pennsylvania, *Finley v. Glenn,* 154 A. 299. There one Mildred Rosekrans, common ancestor in title of plaintiff and defendant, sold a lot to plaintiff. Plaintiff's deed contained a covenant restricting the

kind of buildings which could be constructed on her lot. The deed contained this further covenant: ". . . that the said grantors, shall and will impose the same building restrictions as above set forth, upon all their other lots or pieces of land fronting upon both sides of Mildred Avenue as shown upon the above mentioned plan of lots . . ." The Court said: "The controlling factor in the decision of the case is that the immediate grantors of both plaintiff and defendants were the same. When the latter came to examine the title which was tendered to them, it was of primary consequence that they should know whether their grantors held title to the land which they were to convey. They could determine that question only by searching the records for grants from them. 'The rule has always been that the grantee . . . must search for conveyances . . . made by any one who has held the title.' (Citations.) 'The weight of authority is to the effect that if a deed or a contract for the conveyance of one parcel of land, with a covenant or easement affecting another parcel of land owned by the same grantor, is duly recorded, the record is constructive notice to a subsequent purchaser of the latter parcel. The rule is based generally upon the principle that a grantee is chargeable with notice of everything affecting his title which could be discovered by an examination of the records of the deeds or other muniments of title of his grantor.' Note, 16 A.L.R. 1013, and cases cited; 2 Tiffany's Real Property (1920 Ed.), p. 2188. So doing, defendants would find the deed from Rosekrans and his wife to plaintiff which had been recorded. Coming upon this conveyance, it was their duty to read it, not, as argued by appellant and decided by the chancellor who heard the case, to read only the description of the property to see what was conveyed, but to read the deed in its entirety, to note anything else which might be set forth in it. The deed was notice to them of all it contained; otherwise the purpose of the recording acts would be frustrated. If they had read all of it, they would have discovered that the lots which their vendors were about to convey to them had been subjected to the building restriction which the deed disclosed. It boots nothing, so far as notice is concerned, that they did not acquaint themselves with the entire contents of the deed."

The factual difference between that case and *Turner v. Glenn* is the express covenant made by the common ancestor as to the remainder of his property and the absence of such express covenant in *Turner v. Glenn*. That fact makes the difference in the decisions in the two cases. Similar conclusions have been reached by the courts of a majority of our sister states. See 16 A.L.R. 1013, and cases there cited; also, *Harp v. Parker*, 128 S.W. 2d 211 (Ky.); *Phillips v. Lawler*, 244 N.W. 165 (Mich.); *Black v. Condon*, 58 So. 2d 93 (Miss.); *Adams v. Rowles*, 228 S.W. 2d 849 (Tex.); 17 Am. Jur. 1021.

What more could plaintiff have done to protect his rights? Defendant, when he purchased, not only had constructive, but in fact had actual knowledge of the servitude which Mrs. Shannon had imposed on the property which he was purchasing. He cannot now complain that the court does not permit him to ignore the rights which plaintiff acquired when he purchased. The judgment is

Affirmed.

BOBBITT, J., concurring: A, the owner of certain land, be it a 200-foot lot or a 10-acre tract, decides to sell a portion thereof, *e.g.*, one-half, to B. A's deed to B sets forth explicitly their agreement, to wit, the imposition of identical restrictive covenants on the portion thereof conveyed to B and on the portion thereof retained by A. The restrictive covenants do not purport to affect any land other than said 200-foot lot or 10-acre tract. Only A and B, and their respective heirs and assigns, are bound by said mutual restrictive covenants.

The deed from A to B is duly recorded. Hence, a subsequent purchaser from A of the portion of said lot or tract retained by A is charged with notice that A has imposed upon it said restrictive covenants.

As I see it, the decisions relating to a uniform plan with reference to restrictive covenants where a developer sells a large number of lots have no application. In such cases, the question ordinarily posed is the enforceability of such restrictive covenants by the purchasers *inter se.*

In one sense, when A conveys the retained portion of said lot or tract to a subsequent purchaser, A's deed to B is not in such purchaser's chain of title, that is, A's deed to B is not the source of or a link in such purchaser's title. But in another sense, A's deed to B is in the purchaser's chain of title, that is, such subsequent purchaser is charged with notice of such recorded deed in like manner as he would be charged with notice of a recorded deed of trust, judgment or other record lien imposed during the period of A's ownership. Thus, such purchaser's title, while it does not pass under A's deed to B, is limited by the terms of A's deed to B whereby the restrictive covenants are imposed. The sense in which the expression "chain of title" is used in decided cases must be considered in the light of the facts of each case and in relation to the context in which it is used.

When reasonable restrictive covenants are so imposed my view is that they may be enforced as between A and B, and their respective heirs and assigns, until such time as, by reason of changed conditions, it becomes inequitable to do so.

DENNY, J., dissenting: I do not concur in the majority opinion. I concede, however, that some jurisdictions have adopted the view set

forth therein.  Even so, in my opinion, such view finds no support in the decisions of our Court.

Let us examine the nature of the provision set forth in the plaintiff's deed.  "The foregoing lands are conveyed subject to the condition or restriction that no structure shall be erected by the grantee within 550 feet of the Pineville-Matthews Road, it being understood and agreed that the 100 foot strip leading to said tract of land from the Pineville-Matthews Road shall not be used for purpose of constructing any building thereon, and this restriction shall likewise apply to Lot No. 4, retained by the grantor, said Lot No. 4 being adjacent to lands hereby conveyed."

It will be noted that the grantor did not covenant or agree to insert a similar restriction in her deed, if and when she conveyed Lot No. 4; she only provided that *this* restriction shall apply to Lot No. 4 retained by the grantor.  What is this restriction?  Simply that the grantee in the deed to Lot No. 3 shall not erect any structure within 550 feet of the Pineville-Matthews Road.  The parties then defined the meaning and applicability of the restriction in the following language: ". . . it being understood and agreed that the 100 foot strip leading to said tract of land from the Pineville-Matthews Road shall not be used for purpose of constructing any building thereon, . . ." Was the application to Lot No. 4 for the benefit thereof, or was it intended to be a servitude thereon?  Be that as it may, we adhere to the rule in this jurisdiction that restrictive servitudes being in derogation of the free and unfettered use of the land, the covenants imposing them are to be strictly construed in favor of the unrestricted use of the property. *Callaham v. Arenson,* 239 N.C. 619, 80 S.E. 2d 619; *Craven County v. Trust Co.,* 237 N.C. 502, 75 S.E. 2d 620; *Davis v. Robinson,* 189 N.C. 589, 127 S.E. 697; 14 Am. Jur., Covenants, Conditions and Restrictions, section 212, page 621.

If it be conceded, however, that the intention of the parties was to the effect that no building shall be constructed on Lot No. 4 nearer than 550 feet of the Pineville-Matthews Road, as construed in the majority opinion, I do not think the restriction can rightfully be construed to be anything more than a personal contract or covenant between the parties to the instrument conveying Lot No. 3. *Phillips v. Wearn,* 226 N.C. 290, 37 S.E. 2d 895.

Our decisions emphasize the fact that to be effective the restrictive covenant to be enforced must be a part of a general plan or scheme of development which bears uniformly upon the area affected.  *Craven County v. Trust Co., supra; Sedberry v. Parsons,* 232 N.C. 707, 62 S.E. 2d 88; *Humphrey v. Beall,* 215 N.C. 15, 200 S.E. 918.

The law generally applicable to a plan or scheme for imposing restrictions upon land for particular purposes is succinctly stated in 26

C.J.S., Deeds, section 167(2), page 1143, *et seq.*, as follows: "Where the owner of a tract of land subdivides it and sells distinct parcels thereof to separate grantees, imposing restrictions on its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either on the theory that there is a mutuality of covenant and consideration, or on the ground that mutual negative equitable easements are created." *Maples v. Horton*, 239 N.C. 394, 80 S.E. 2d 38; *Craven County v. Trust Co., supra; Sedberry v. Parsons, supra; Higdon v. Jaffa*, 231 N.C. 242, 56 S.E. 2d 661; *Vernon v. Realty Co.*, 226 N.C. 58, 36 S.E. 2d 710; *Brenizer v. Stephens*, 220 N.C. 395, 17 S.E. 2d 471; *Franklin v. Elizabeth Realty Co.*, 202 N.C. 212, 162 S.E. 199; *Bailey v. Jackson*, 191 N.C. 61, 131 S.E. 567; *Johnston v. Garrett*, 190 N.C. 835, 130 S.E. 835; *Homes Co. v. Falls*, 184 N.C. 426, 115 S.E. 184.

There is no contention that a general scheme or plan was ever contemplated in connection with the lands involved in this appeal. The grantor, Sallie W. Shannon (widow), conveyed tracts 1 and 2, containing 3 and 3.75 acres respectively, without imposing any restrictions whatever thereon. Moreover, these tracts lie between tract 3 and the Pineville-Matthews Road, except for the 100 foot access corridor to the highway. Furthermore, while it appears that Lot No. 4, consisting of 42.32 acres; Lot No. 5, consisting of 30.9 acres; and Lot No. 6, consisting of 9.5 acres, all fronting on the Pineville-Matthews Road, there is no suggestion that any of these lots, including Lot No. 4, when conveyed by Mrs. Sallie W. Shannon (widow), contained any restrictions whatever.

In *Phillips v. Wearn, supra*, 262 lots in 26 different blocks of a development were sold without restrictions, and 433 lots in 31 blocks were sold with restrictions. The lots sold without restrictive covenants in the deeds as well as those sold subject to restrictions were scattered throughout the development. It was held that the development had never been subject to any scheme or general plan whereby the restrictive covenants in the deeds could have been enforced by the grantees *inter se. Humphrey v. Beall, supra.* And that since the *locus in quo* had never been subject to any general plan of development the restrictive covenants in the deeds executed by the original developer or its successors, were never enforceable except as personal covenants. *DeLaney v. Hart*, 198 N.C. 96, 150 S.E. 702; *Thomas v. Rogers*, 191 N.C. 736, 133 S.E. 18; *Snyder v. Heath*, 185 N.C. 362, 117 S.E. 294.

In the case of *Ivey v. Blythe, et al.*, 193 N.C. 705, 138 S.E. 2, the plaintiff contracted to sell and the defendants to purchase Lot No. 10 of Square 5 of Piedmont Park in the City of Charlotte. The Piedmont Realty Company had subdivided a tract of land containing 83 acres. This company conveyed lots, including the lot in controversy,

to F. C. Abbott. The deed to the property contained restrictions as to the use of the lots fronting on Central Avenue and Seventh Street. Later, Abbott reconveyed Lot No. 10 in Square 5, which fronted on Central Avenue, to Piedmont Realty Company. This company thereafter sold and conveyed this lot to J. B. Ivey without restrictions, but the following appeared in the description: "Being the same lot No. 10, Square 5, conveyed by the Piedmont Realty Company to F. C. Abbott by deed, and recorded in the office of the register of deeds for Mecklenburg County, in Book 150, p. 237." The defendants refused to accept the deed which plaintiff tendered, upon the ground that the plaintiff could not convey a title free from restrictions. The court below held that plaintiff could convey a fee simple title to the property, free and clear of restrictions. Upon appeal to this Court, *Brogden, J.*, speaking for the Court, said: "In *Davis v. Robinson*, 189 N.C. 589, this Court held, upon the facts presented in that case, that Piedmont Park was not the result of a general plan or scheme of development of an exclusive residential community. . . .

"In the case at bar, the plaintiff holds a deed for the lot in controversy, which contains no restrictions whatever, but the defendants contend that the clause in plaintiff's deed from Piedmont Realty Company, 'being the same lot No. 10, Square 5, conveyed by the Piedmont Realty Company to F. C. Abbott, by deed recorded in the office of the register of deeds for Mecklenburg County, in Book 150, p. 237,' was intended to subject plaintiff's land to the restrictions contained in the original deed from Piedmont Realty Company to Abbott, bearing date of 20 October, 1900. We do not think that this clause can be enlarged so as to create a restriction. Apparently the clause is a mere reference to a former conveyance for the sole purpose of aiding the identification of the land. A restriction of the free enjoyment and use of property should be created in plain and express terms; and, while perhaps it may be possible, by implication, to create restriction and encumber the free and untrammeled flow of property from purchaser to purchaser, such implication ought to appear plainly and unmistakably."

A restriction on the use of land may be enforceable as a contract without regard to any general plan or scheme of development. However, in such instances, the enforceability of the contract rests squarely upon the terms and conditions of the contract being set out in the grantee's chain of title. *Starmount Co. v. Memorial Park*, 233 N.C. 613, 65 S.E. 2d 134; *Phillips v. Wearn, supra.*

In *Turner v. Glenn*, 220 N.C. 620, 18 S.E. 2d 197, in considering the enforceability of restrictions in a deed, *Barnhill, J.*, later *Chief Justice*, speaking for the Court, said: ". . . it is the duty of a purchaser of land to examine every recorded deed or instrument in his line of title and he is conclusively presumed to know the contents of such instruments and

is put on notice of any fact or circumstance affecting his title which either of such instruments reasonably discloses. He is not, however, required to examine collateral conveyances of other property by any one of his predecessors in title."

Likewise, in the case of *Sheets v. Dillon*, 221 N.C. 426, 20 S.E. 2d 344, *Barnhill, J.*, later *Chief Justice*, said: "Ordinarily, it is only when the subdivided property is conveyed by deeds containing uniform restrictions in accord with a general scheme and for the benefit of all within a specified area that the other grantees of the owner of the original tract may enforce the restriction."

More recently, in the case of *Hege v. Sellers*, 241 N.C. 240, 84 S.E. 2d 892, it appears that in 1948 J. L. Sides and wife, Ophelia M. Sides, began a residential development known as Wooded Acres. The development contained 40 lots. Thirty of these lots were sold and the deeds contained uniform restrictions, including racial restrictions. Nine of the lots were sold omitting the racial restrictions but containing all the other restrictions. The first restriction inserted in all thirty-nine deeds reads as follows: "1. All lots contained in this property known as Wooded Acres shall be used for residential purposes only." J. L. Sides and wife agreed to convey Lots Nos. 10 and 11 of the subdivision to Hollis P. Allen and wife, Alma C. Allen, plaintiffs in the action, and they in turn agreed to sell these lots to the defendants C. G. Sellers and wife, Irene T. Sellers. Sides and wife conveyed to H. P. Allen and wife Lot No. 10 containing the same restrictions set out in the deeds to the thirty lots referred to above. At the request of Mr. Allen, Lot No. 11 was conveyed from Sides and wife directly to Sellers and wife without restrictions. Allen testified it was his understanding in parol with Sellers that the uniform restrictions should be inserted in the deed to Lot No. 11. Sellers testified there was no such agreement. Likewise, Sides and wife, who were also defendants, filed answer and denied any agreement with Allen and wife that restrictions should apply to Lot No. 11, the topography of it being unsuitable for a home site but could be used for something like a road. Sellers and wife were seeking to use Lot No. 11 for a street leading to other property. The court below held that the plaintiffs, among them numerous owners of lots in the subdivision, could not enforce the restrictions against Sellers and wife with respect to Lot No. 11. Upon appeal to this Court, *Higgins, J.*, speaking for the Court, said: "The remaining question is whether the defendants C. G. Sellers and wife in accepting a deed without restriction, nevertheless were charged with such notice of the plans and purposes in the development of Wooded Acres as would make the uniform restrictions applicable to Lot No. 11. As has already been pointed out, no restrictions appear in the chain of title to that lot. No notice, there-

fore, can be found in the line of title. The recorded map shows no restrictions. 'The law contemplates that a purchaser of land will examine each recorded deed or other instrument in his chain of title, and charges him with notice of every fact affecting his title which such examination would disclose. In consequence, a purchaser of land is chargeable with notice of a restrictive covenant by the record itself if such covenant is contained in any recorded deed or other instrument in his line of title, even though it does not appear in his immediate deed.' *Higdon v. Jaffa,* 231 N.C. 242, 56 S.E. 2d 661; *Sheets v. Dillon,* 221 N.C. 426, 20 S.E. 2d 344; *Turner v. Glenn,* 220 N.C. 620, 18 S.E. 2d 197. Since the effective date of the Connor Act, 1 December, 1885, in matters involving the title to land it is intended that the public registry should be the source of notice. Since then it is considered not enough to send word by the mail boy. Notice, however full and formal, cannot take the place of registered documents. *Austin v. Staten,* 126 N.C. 783, 36 S.E. 338; *Hinton v. Williams,* 170 N.C. 115, 86 S.E. 994; *Blacknall v. Hancock,* 182 N.C. 369, 109 S.E. 72."

Our Court has held that where restrictive covenants in the nature of mutual negative easements have been inserted in the deed pursuant to a general plan of development, such restrictions will remain in full force and effect even though one or more of the *mesne* conveyances may omit the restrictions. *Sedberry v. Parsons, supra; Higdon v. Jaffa, supra; Sheets v. Dillon, supra; Turner v. Glenn, supra; Bailey v. Jackson, supra.*

I know, however, of no decision in this jurisdiction that upholds a building restriction in the nature of a negative easement when such restriction appears nowhere in the grantee's chain of title, as in the instant case. Hence, I vote to reverse the judgment of the court below.

WINBORNE, C. J., and HIGGINS, J., join in the dissent.