Case #1

JIMMY V. MARRONE, JR., AND WIFE, ARTHUR MAE MARRONE v.
CHARLES E. LONG

— AND —

Case #2

CHARLES FRANKLIN HELMS AND WIFE, DELANA HELMS v.
CHARLES E. LONG

No. 2

(Filed 14 October 1970)

Deeds § 20— restrictive covenant in recorded deed from grantor — subsequent sale of subdivision lots — enforcement

The owners of a 15-acre tract conveyed to plaintiffs a lot therefrom by recorded deed which provided, "This conveyance is made subject to the following restrictions, which shall run as covenants with the land, violations of which restrictions shall be exposure to suits for damages by any and all adjoining property owners, who shall be defined as the grantors herein or any of their subsequent grantees who might acquire any portion of the original 15 plus acre tract . . . 2. Exterior construction shall not be less than 1,500 square feet of heated living area." The owners thereafter conveyed other lots from the tract, including a lot to defendant who erected a residence thereon containing 1000 square feet of heated living area. *Held:* The plaintiffs are not entitled to enforce the restrictive covenants in their deed against the defendant, since the deed imposed restrictions only upon the lot conveyed to plaintiffs and not upon the remaining lots of the 15-acre tract.

PLAINTIFFS appeal under G.S. 7A-30(2) from the decision of the Court of Appeals affirming the judgment of *Crissman, J.*, entered at the August 1969 Session of UNION. The decision is reported in 7 NC App. 451.

These two actions were brought by owners of lots in a subdivision to enforce restrictive covenants allegedly applicable to

all lots in the subdivision but contained only in the deed to one of the plaintiffs. The cases were consolidated for trial. The parties waived a jury and stipulated the following facts:

Prior to 22 June, 1965, E. B. Aycock and wife owned a 15-acre tract of land in Monroe Township, Union County. On that date they conveyed to plaintiffs Marrone a portion of that tract, a lot 200 feet x 200 feet, fronting on U. S. Highway No. 74 and a "60-foot wide proposed subdivision street." The lot was described by metes and bounds without reference to map or lot number. The deed contained the following provisions:

"THIS CONVEYANCE IS MADE SUBJECT TO THE FOLLOWING RESTRICTIONS, WHICH SHALL RUN AS COVENANTS WITH THE LAND, VIOLATIONS OF WHICH RESTRICTIONS SHALL BE EXPOSURE TO SUITS FOR DAMAGES BY ANY AND ALL ADJOINING PROPERTY OWNERS, who shall be defined as the Grantors herein or any of their subsequent Grantees who might acquire any portion of the original 15 plus acres tract:

"1.  Property shall be restricted to residential uses only, and no residence shall have more than one detached outbuilding.

"2.  Exterior construction shall be not less than 1,500 square feet of heated living area.

"3.  Exterior construction shall not have any exposed concrete, cinder or solite block.

"4.  No more than one dwelling improvement shall be constructed on any one lot, as originally sold by the Grantors herein.

"5.  No construction improvements shall be erected nearer than 30 feet to an adjacent street or road right-of-way, nor nearer than 8 feet to any other property line.

"6.  No sign of greater size than 3' x 5' shall be displayed for any purpose."

Thereafter, the Aycocks subdivided the 15 acres into streets and lots numbered 1 through 27, as shown by the "Map of Boulevard Park," surveyed 27 September 1965 by Ralph W. Elliott, R. L. S. This map was duly recorded in the office of the Register of Deeds on 1 October 1965. The land previously conveyed to plaintiffs Marrone was designated on the map as lot No. 1. The remaining lots in the subdivision (2 through 27) were subsequently conveyed by deeds which contained no restrictive cove-

nants and made no reference to the deed from Aycock to Marrone. On 5 October 1965 the Aycocks conveyed lots 7, 8, 9, and 12 to plaintiffs Charles F. Helms and wife. On the same day lots 2, 3, 4, and 5 of the subdivision were conveyed to Robert O. Helms and wife. On 10 December 1968, Robert O. Helms and wife conveyed lots 2, 3, 4, and 5 to defendant Charles E. Long. Only lot No. 5 is involved in this controversy.

Defendant erected upon lot No. 5 a residence containing approximately 1,000 square feet of heated living area. Plaintiffs, contending that the restrictions contained in the deed to Marrone apply to all lots in the subdivision and that defendant's dwelling is in violation of Restriction No. 2, which requires not less than 1,500 square feet of heated living area for a residence, instituted these actions. In each suit they seek damages and a mandatory injunction requiring defendant either to remove his building from the subdivision or to bring it into compliance "with the covenants and restrictions in effect upon the subdivision."

The parties agreed that the only question raised is whether the restrictions in the Marrone deed apply to defendant's lot. Judge Crissman ruled the restrictions inapplicable and dismissed the actions. Plaintiffs appealed and, in a decision by Judge Vaughn and Chief Judge Mallard, the Court of Appeals affirmed the decision of the trial court. Judge Morris dissented and plaintiffs appealed as a matter of right to this Court.

*Dawkins and Holland for plaintiff appellants.*

*Coble Funderburk for defendant appellee.*

SHARP, Justice.

Plaintiffs rely upon *Reed v. Elmore,* 246 N.C. 221, 98 S.E. 2d 360. That case, however, is not authority for their position. In *Reed,* the grantor, Mrs. Shannon, sold the plaintiff lot No. 3 of the 7-lot subdivision of a 154-acre tract. In the plaintiff's deed, lot No. 3 was subjected to a building restriction which, it was specifically provided, should "likewise apply to adjoining lot No. 4, retained by grantor." The plaintiff duly recorded his deed. Thereafter, by a deed containing no restrictions and no reference to the plaintiff, Mrs. Shannon conveyed lot No. 4 to the defendants' predecessor in title. No deed in the defendants' chain of title imposed any restriction upon lot No. 4 or referred

to the plaintiff's deed. Notwithstanding, this Court held that the subsequent purchaser of lot No. 4, and all subsequent transferees, were charged with notice of the restriction put upon lot No. 4 in the plaintiff's prior recorded deed, since an examination of the recorded Shannon conveyances would have revealed the restriction.

The distinction between these cases and *Reed* is that in *Reed* the deed to the plaintiff imposed a *specific* restriction upon certain lands *retained* by the grantor. Here, the deed to plaintiffs Marrone imposed restrictions *only* upon the land *conveyed* to them and provided in clear language that any violation of those restrictions would subject the Marrones or their grantees to suit by E. B. Aycock and wife or any of their subsequent grantees who might acquire any portion of the original 15-acre tract of which the Marrone lot was a part. When the Aycocks sold the remaining lots in the subdivision by number, no restrictions were imposed upon any of them, either specifically or by reference.

Although the Marrone lot was described by metes and bounds and not by a lot number, the reference to a "60-foot wide proposed subdivision street" indicates that the grantors had already plotted the Boulevard Park Subdivision. The map of Boulevard Park, which was subsequently recorded, is part of the record. It shows the Marrone property to be the largest lot in the subdivision and to have a frontage of 200 feet on three public thoroughfares. No other lot provided such an attractive site for a filling station or some other business which might not have been welcome in the area. No other lot was so apt to be subdivided. Thus, it is plausible to assume that the grantors had reasons not applicable to the other 26 lots for restricting lot No. 1. In any event, had the grantors intended to impose the Marrone restrictions upon the remaining 26 lots, it is inconceivable to us that they would have failed to include them specifically. We concur in the reasoning of the majority opinion of the Court of Appeals.

Affirmed.